UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

WILLIAM ALLEN,

        Petitioner,

    -v-                             No.  09-CV-5832-LTS

JAMES J. WALSH,

        Respondent.

--------------------------------------------------------x

<u>ORDER</u>

The Court has received a letter from <u>pro se</u> Petitioner William Allen, dated February 28, 2025, and filed at docket entry no. 71.  The letter provides a status report on the state court proceedings underlying his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. section 2254.  (<u>See</u> docket entry no. 1.)

Because the filed letter includes privileged attorney-client communications, the Clerk of Court is directed to seal docket entry no. 71.  Appended to this Order is a version of the letter filed at docket entry no. 71 in which such privileged communications have been redacted.

SO ORDERED.

Dated: New York, New York
      March 17, 2025

                                    /s/ Laura Taylor Swain
                                    LAURA TAYLOR SWAIN
                                    Chief United States District Judge

Copy mailed to:
William Allen
03-A-4303
Green Haven Correctional Facility
P.O. Box 4000

594 Rt. 216
Stormville, NY 12582-0010

Mr. William M. Allen, Jr.
Din. #03-A-4303, Loc. A3-305
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York  12582-4000

February 28, 2025

United States District Court
Chambers of Chief Judge
Laura Taylor Swain
U.S. Courthouse
500 Pearl Street
NYC, New York  10007



Re:  William Allen v. Walsh
     09-CV-5832, (LTS)
     Petitioner's Continued Update
     Status Report For March 19, 2025

Dear Judge Swain:

Enclosed are copies of the following 1) a letter and court's order from the "Supreme Court of the State of New York Appellate Division, First Department" dated January 7, 2025, and the court's order is dated: December 18, 2024, Entered: December 19, 2024, with envelope postage mark dated January 10, 2025. 2) An introduction letter from a Supervising Attorney name Will A. Page, from OAD (Office of the Appellate Defender) who is working on my appeal (i.e. C.P.L. Sec. 460.15 motion) to the Appellate Division First Department, which is in relation to my pro se C.P.L. 440.30 motion. This letter is dated January 23, 2025 with a copy of the envelope dated January 24, 2025.

3) I received a copy of a Notice of Application For Leave To Appeal (C.P.L. 460.15) Ind. No. 623/83 (Bronx County) AD No. 2023 - 04645 with an Affirmation In Support Application For Leave To Appeal, with exhibits from my assigned attorney Will Page, Esq. Enclosed is a copy of said Appeal (i.e. Notice of Application for Leave to Appeal).

*Please note: Somehow there appears to be a mixup I am no longer in Sullivan C. F. it has been closed down since early November 2024.  I am now it Green Haven C.F. since mid September of 2024, please know that

(1)

the last Memo Endorsed (i.e. 12/19/2024) by Chief USDJ Laura Taylor
Swain was sent to Sullivan C.F. which I did not receive until early
January of this year. Thanking this Honorable Court for your help
within this matter.


Respectfully submitted,

*William M. Allen, Jr.*
William M. Allen, Jr.
pro se Petitioner


cc:  wma jr.

(2)

SUPREME COURT OF THE STATE OF NEW YORK
BRONX COUNTY
------------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                         Respondent,

       - against -                   **AFFIDAVIT**
                                            Indictment No. 623/83

WILLIAM ALLEN,

                      Defendant.
------------------------------------------------------------------------X

      Sgt. Ralph Charles, being duly sworn, hereby deposes, under the penalty of perjury the

following:

      1.     That I have been employed by the New York City Police Department (hereinafter

"NYPD") for over fifteen years. I am presently a Sergeant in the Bronx Borough Property Clerk's

Office, located at 215 E. 161st Street, Bronx, New York 10451. I have worked at this command for

ten years.

      2.     As a Sergeant in the Bronx Borough Property Clerk's Office, my duties include

safeguarding and cataloguing evidence kits and other items in NYPD possession, and having them

ready for court presentations or for release to rightful owners. I am also responsible for searching

for and retrieving items in NYPD possession.

      3.     On or about May 28, 2013, I conducted a search for property listed under Invoice #

B302254 as a "sexual evidence kit" and one white pantie (hereinafter "Property Invoice #

B302254").

      4.     On or about May 28, 2013, I searched the Bronx Borough Property Clerk's Office for

Property Invoice # B302254 with negative results.

      5.     On or about May 28, 2013, I conducted a search for the Biological Evidence

Containers but they could not be located.

6.    On or about May 28, 2013, I conducted a search for the logs maintained by Pearson Place Warehouse, for the above-referenced invoice number but they could not be located.

7.    On or about May 28, 2013, I conducted a search for the NYPD "Out to Lab" files for the above-referenced invoice number but they could not be located.

8.    On or about May 28, 2013, I conducted a search for the NYPD "Out to Court" files for the above-referenced invoice number but they could not be located.

9.    On or about May 28, 2013, I conducted a search for the NYPD "Closed Out" files for the above-referenced invoice number but they could not be located.

10.    On or about May 28, 2013, I called the OCME Office and asked to have their logs searched for the above-referenced invoice number with negative results.

11.    On or about May 28, 2013, I examined the Bronx Property Clerk Borough Office Cross Reference Log, and learned that a storage number had been assigned to it.

12.    Based upon the above-mentioned information, I was unable to locate the property associated with Invoice # B302254 nor any NYPD paperwork indicating where the property could be located.

Sgt. Ralph Charles
Bronx Borough Property Clerk's Office

Sworn to before me this 27th day of January 2018

Notary Public

Julie Cleary
Notary Public, State of New York
Qualified in Westchester County
Registration No. 01CL5054664
Commission Expires 11/29/18

2



# Supreme Court of the State of New York
## Appellate Division, First Department

DIANNE T. RENWICK
PRESIDING JUSTICE

SUSANNA MOLINA ROJAS
CLERK OF THE COURT

DOUGLAS C. SULLIVAN
DEPUTY CLERK OF THE COURT

VICTORIA L. CHOY
DEPUTY CLERK OF THE COURT

January 7, 2025

William Allen
DIN# 03-A-4303
Green Haven Corr. Fac.
594 Route 216
STORMVILLE, New York 12582-0010

Re: People  v  William Allen
Lower Court No.  623/1983
Appellate Division Case No.   2023-04645

Dear William Allen,

  We acknowledge receipt of your correspondence dated November 25, 2024. We are writing to inform you that your motion for Additional Time to Submit Additional papers, referenced as M2024-04071, was decided on December 19, 2024.

  Enclosed with this letter is a copy of the court's order.

Very truly yours,

Clerk's Office

# 𝖲𝗎𝗉𝗋𝖾𝗆𝖾 𝖢𝗈𝗎𝗋𝗍 𝗈𝖿 𝗍𝗁𝖾 𝖲𝗍𝖺𝗍𝖾 𝗈𝖿 𝖭𝖾𝗐 𝖸𝗈𝗋𝗄
## 𝖠𝗉𝗉𝖾𝗅𝗅𝖺𝗍𝖾 𝖣𝗂𝗏𝗂𝗌𝗂𝗈𝗇, 𝖥𝗂𝗋𝗌𝗍 𝖩𝗎𝖽𝗂𝖼𝗂𝖺𝗅 𝖣𝖾𝗉𝖺𝗋𝗍𝗆𝖾𝗇𝗍

BEFORE:     Hon. Jeffrey K. Oing
            Justice of the Appellate Division

---

The People of the State of New York,           Motion No.     2023-04071
                    Respondent,                Ind. No.       623/1983
                                               Case No.       2023-04645
                    -against-
                                                    **ORDER**
William Allen,
                    Defendant.

---

Defendant-appellant having previously moved for reargument of the decision and order of this court (Jeffrey K. Oing, J.) entered on September 23, 2021 (Motion No. 2021-02201), which (i) denied defendant's motion for a certificate, pursuant to Criminal Procedure Law sections 450.15 and 460.15, granting him leave to appeal from the order of the Supreme Court, Bronx County, entered on or about April 26, 2001, and (ii) denied the request for poor person relief and assignment of counsel as academic,

And upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon, this court (Jeffrey K. Oing, J.) granted on August 3, 2023 (Motion No. 2022-02555) the motion to reargue to the extent of vacating the certificate denying leave, pending submission of additional papers on the motion, and granted the defendant poor person relief, pursuant to CPL 380.55(2), and assigned Caprice R. Jenerson, Esq., Office of the Appellate Defender, 11 Park Place, Suite 1601, New York, New York, 10007, Telephone No. 212-402-4100, for purposes of submitting the aforesaid additional papers seeking leave to appeal pursuant to CPL sections 450.15 and 460, and directed that such papers shall be submitted within 60 days from the date of entry of the order,

And the Office of the Appellate Defender having moved for a 90-day extension to submit additional papers in order to properly review, evaluate, and effectively assist the defendant-appellant with his motion,

Now upon reading the papers with respect to the motion, and due deliberation having been had thereon, this court (Jeffrey K. Oing, J.), grants the motion to the extent of providing a 60-day extension from the date of the entry of this order.

Dated: December 18, 2024
       New York, New York

Entered: December 19, 2024

                                        Hon. Jeffrey K. Oing
                                        Associate Justice

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION, FIRST DEPARTMENT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK,<br>*Respondent,*<br><br>—— against ——<br><br>WILLIAM ALLEN,<br>*Defendant-Petitioner.* | NOTICE OF<br>APPLICATION<br>FOR LEAVE<br>TO APPEAL<br>(C.P.L. § 460.15)<br>Ind. No. 623-1983<br>(Bronx County)<br>AD No. 2023-04645 |

PLEASE TAKE NOTICE that upon the annexed affirmation, accompanying legal memorandum, and attached exhibits, the undersigned will move this Court, on March 17, 2025, or as soon thereafter as counsel can be heard, for a certificate, pursuant to N.Y. C.P.L. § 460.15, granting leave to appeal to this Court from the underlying decision denying William Allen's C.P.L. § 440.30 motion without a hearing, and granting any other relief that this Court deems just and proper.

Please take further notice that, pursuant to N.Y. C.P.L.R. § 2214(b), answering papers, if any, shall be served at least seven days before the return date.

Dated: New York, New York
February 13, 2025

CAPRICE R. JENERSON
*Attorney for Defendant-Appellant*

By:    WILL A. PAGE, ESQ.
*Supervising Attorney*
wpage@oadnyc.org

OFFICE OF THE APPELLATE
DEFENDER
11 Park Place, Suite 1601
New York, New York 10007
(212) 402-4100

<u>VIA NYSCEF</u>

To:   CLERK OF THE COURT
      Appellate Division, First Judicial Department
      27 Madison Avenue
      New York, New York 10010

      DARCEL D. CLARK, DISTRICT ATTORNEY (and via email)
      Bronx County District Attorney's Office
      198 East 161st Street
      Bronx, New York 10451

      MR. WILLIAN ALLEN [03A4303] (via first-class mail)
      Green Haven Correctional Facility
      594 Rt. 216
      Stormville, New York 12582-0010

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION, FIRST DEPARTMENT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK,<br>*Respondent,*<br><br>— against —<br><br>WILLIAM ALLEN,<br>*Defendant-Petitioner.* | AFFIRMATION IN SUPPORT OF APPLICATION FOR LEAVE TO APPEAL (C.P.L. § 460.15)<br>Ind. No. 623-1983<br>(Bronx County)<br>AD No. 2023-04645 |

WILL A. PAGE, an attorney duly admitted to practice in the State of New York, hereby affirms under penalty of perjury that the following statements are true:

1. I am a Supervising Attorney at the Office of the Appellate Defender (OAD), which was assigned by order of this Court to represent Mr. William Allen on his *pro se* N.Y. C.P.L. § 460.15 motion. *See generally* Exhibit A (extension of time order). I have reviewed Mr. Allen's *pro se* submission (filed June 28, 2021 and attached as Exhibit B) and now submit the following supplemental application for a certificate granting leave to appeal to this Court from an Order of the Supreme Court, Bronx County (Carter, J.), dated April 26, 2021, denying his re-filed *pro se* C.P.L. § 440.30 motion without a hearing. *See* Decision (attached as Exhibit C).

2. All statements of fact in this affirmation and the attached memorandum of law are made upon information and belief, based on a review of the record provided, particularly the attached materials related to Mr. Allen's post-judgment motions.

1

3.    The following exhibits are attached and relied upon:

a.  Order of this Court Granting Extension of Time (entered Dec. 18, 2024, noting assignment of OAD on Aug. 3, 2023)

b.  *Pro Se* Application per C.P.L. § 460.15 (June 19, 2021)

c.  Decision and Order on *Pro Se* C.P.L. § 440.30 (Apr. 26, 2021) (Carter, J.)

d.  Opposition to *Pro Se* C.P.L. § 440.30 (filed Dec. 28, 2018)

e.  *Pro Se* C.P.L. § 440.30 Motion (served Aug. 6, 2018) (re-filed)

f.  Letter from prior post-conviction counsel (May 3, 2018) (correcting information)

g.  Letter from prior post-conviction counsel (Mar. 19, 2018) (abandoning motion)

h.  Affidavit of Sgt. Ralph Charles (Jan. 12, 2018)

i.  Letter from prior post-conviction counsel (Mar. 22, 2013) (status update)

j.  Counseled C.P.L. § 440.30 Motion (served Oct. 24, 2012)

k.  *People v. Allen*, 47 A.D.3d 543 (1st Dep't 2008) (affirming denial of § 440.30 motion for DNA testing, before the statute was amended in 2012, because Mr. Allen had pled guilty)

l.  Decision and Order on first C.P.L. § 440.30 motion (Dec. 20, 2006) (pre-C.P.L. amendments)

m.  Opposition to first C.P.L. § 440.30 motion (Dec. 15, 2006)

n.  *People v. Allen*, 140 A.D.2d 229 (1st Dep't 1988) (reversing conviction and ordering new trial)

4.    The questions of law and fact which ought to be reviewed by this Court include the following:

a.  Was it error to deny, without a hearing, Mr. Allen's request for DNA testing where respondent did not exercise any diligence in ascertaining the location or whereabouts of the items for DNA testing and, instead, belatedly filed a cursory affidavit that showed only one day's efforts attempting to locate information without reference to other known DNA samples mentioned in the motion?

b.  Was it error to deny, without a hearing, the portion of Mr. Allen's *pro se* motion claiming of ineffective assistance of appellate counsel where appellate counsel filed the original motion, allowed the motion to linger for years without adequate response from respondent, and then abandoned the motion when respondent finally provided a belated and cursory affidavit claiming the items to be tested could not be found?

Relevant Background and Procedural Posture

5.    On May 19, 1988, Mr. Allen's conviction, after trial, for certain sex offenses related to an incident of stranger rape in an apartment building in 1983, was reversed by this Court, with a new trial ordered. *See* Exhibit N. Specifically, this Court explained that the "only proof of [Mr. Allen's] guilt was the complainant's

identification[.]" *People v. Allen*, 140 A.D.2d 229, 232 (1st Dep't 1988). That fact made the practical exclusion of evidence surrounding the condition of his teeth—a key component of the complainant's description of the perpetrator which the defense planned to rebut—reversible error. *Id.*

6.    On May 8, 1989, rather than enduring the uncertainty of another trial, Mr. Allen was convicted, upon guilty plea, of first-degree rape (N.Y. Penal Law § 135.35(1)) and first-degree robbery (Penal Law § 160.15(1)); he was sentenced to six to eighteen years of incarceration. *See* Decision (Exh. C), at 1.

7.    On May 3, 2006, Mr. Allen filed a C.P.L. § 440.30 motion seeking DNA testing of items previously submitted to Lifecodes Corporation for testing and of other items from the original rape kit and from collected physical evidence. *See* Opp'n to Motion at 3 (Exh. M). That motion was denied on December 20, 2006, *see* Decision (Seewald, J.) (Exh. L), and, on appeal, this Court agreed with the lower court that such relief was unavailable (at the time) because Mr. Allen had pled guilty. *See People v. Allen*, 47 A.D.3d 543 (1st Dep't 2008) (statute did "not permit persons who pleaded guilty to seek DNA testing of forensic evidence") (Exh. K).

8.    In 2012, C.P.L. § 440.30 was amended to allow those who pled guilty to nevertheless seek DNA testing, particularly if "there exists a substantial probability that the evidence would have established the defendant's actual innocence of the offense . . . ." C.P.L. § 440.30(1-a)(a)(2).

9.      On October 24, 2012, Mr. Allen, through prior appellate counsel, filed a new C.P.L. § 440.30 motion seeking to take advantage of the new procedural rules. *See* Counseled Motion (Exh. J). Prior counsel asserted that the DNA results would establish a substantial probability that Mr. Allen was innocent of the crimes of conviction, reminded the motion court that no forensic evidence had been admitted at Mr. Allen's trial, that Mr. Allen's defense was of mistaken identification, and that the only proof of his guilt was the complainant's questionable identification. *Id.* at 2.

10.     Prior counsel also specifically noted that, after the reversal of Mr. Allen's original convictions, the District Attorney had sent evidence to Lifecodes for DNA testing. *Id.* at 6. Though Lifecodes had been unable—in 1988—to make DNA comparisons, it retained the DNA that was isolated, which could be "made available for additional analysis." *Id.* Prior counsel also explained that, in response to Mr. Allen's earlier 2006 testing motion, the District Attorney had submitted only a prosecutor's affirmation indicating they were still trying to find items for DNA testing. *Id.* at 8.

11.     Counsel argued that "[c]urrent tests are far more sensitive, requiring far less DNA than the prevailing tests that were used in 1988." *Id.* at 13. Counsel pointed to both the actual forensic evidence and the Lifecodes stored "isolated DNA" as potential sources for DNA testing. *Id.* at 16. And counsel sought a hearing to determine, upon reliable information, the existence or non-existence of the materials—along with the basis of that knowledge. *Id.* at 22.

12.    Finally, prior counsel explained that Mr. Allen had been diligently pursuing this relief, but the remedy simply did not exist until C.P.L. § 440.30 was amended—as demonstrated by the procedural denial of his prior motion. *Id.* at 31.

13.    Mr. Allen's counseled 2012 motion was never resolved. Instead, the judge considering the motion "took the motion off the court's calendar while awaiting" affidavits from the prosecution. *See* Decision at 2 (Exh. C).

14.    Respondent finally presented an affidavit—nearly six years later—documenting some unsuccessful attempts to find the evidence. Aff. Sgt. Ralph Charles (Jan. 12, 2018) (Exh. H). That affidavit did not discuss the stored Lifecodes DNA. It also did not document anything more than a single set of searches on a single day: May 28, 2013. Similarly, the affidavit did not explain why that single set of inquiries would be sufficient to resolve the search for these items—particularly the stored evidence at Lifecodes.

15.    By that time, the counseled motion had apparently been lost by the District Attorney and the court system. *See* Opp'n to *Pro Se* Motion at 4 (Exh. D).

16.    Prior counsel then informed Mr. Allen that, if he wanted to proceed, since his original motion had been lost, he would have to refile—but that because of the affidavit there was "no reason" to do so. *See* Ltr. to Allen (Mar. 19, 2018) (Exh. G).

17.    On August 6, 2018, Mr. Allen attempted to reassert his rights by re-filing, *pro se*, his motion for DNA testing. *Pro Se* Motion (Exh. E). Even that effort was complicated (the judge that eventually decided his *pro se* motion noted there had been

additional confusion and difficulty getting all of the papers re-filed and re-served). *See* Decision at 2-3 (Exh. C) (discussing a different judge's medical leave and confusion on the part of the court).

18.    In the operative *pro se* motion, Mr. Allen additionally asserted that prior post-conviction counsel had rendered ineffective assistance by letting over five years elapse between the filing of the counseled motion and the eventual production of the affidavit claiming the whereabouts of the evidence was unknown. Mr. Allen also asserted prior counsel was ineffective for not renewing the motion after that lengthy delay, during which time counsel had not made any arguments against the District Attorney's deleterious foot-dragging. *See Pro Se* Motion (Exh. E) at 2-3.

19.    In opposing the motion, the District Attorney claimed to have been diligent, though the prosecutor made no mention of the Lifecodes data, of which it had always been aware. Opp'n to *Pro Se* Motion at 4-5 (Exh. D).[1]

20.    Judge Carter decided the motion without a hearing on April 26, 2021, denying all claims. Specifically, the motion court was satisfied that the District Attorney had met their burden to establish that the location of the evidence was unknown. Decision at 3 (Exh. C). The court made no mention of the cursory nature of the affidavit, nor its facial deficiency with respect to the stored DNA at Lifecodes. *Id.*

---

[1] As demonstrated by the attached exhibits, the testing was done in 1988. Respondent was also acutely aware of that source of DNA in 2006 when responding to Mr. Allen's original DNA testing motion. And prior counsel mentioned the Lifecodes DNA specifically in the 2012 motion, as did Mr. Allen in 2018 in his refiled *pro se* motion incorporating the original motion.

21.    On May 14, 2021, Mr. Allen sought permission to appeal to this Court. *See Pro Se* C.P.L. § 460.15 Motion (Exh. B).    Permission was initially denied on September 23, 2021, but that order was rescinded, and OAD was assigned to assist with his application.    *See* Extension of Time Order (Exh. A).

22.    The instant application now follows.

<u>Basis for C.P.L. § 460.15 Application</u>

23.    Mr. Allen has diligently pursued his right to have DNA testing performed, which he believes will exonerate him for the crimes for which he was convicted.

24.    In contrast, respondent has not acted diligently in tracking down those items.    Particularly troubling is the delay—over five years—in providing a conclusory affidavit which shows little to no effort expending on recovering these items.    Indeed, even that extremely belated affidavit makes no mention of the stored Lifecodes DNA, which was discussed in Mr. Allen's original § 440.30 motion (before the change in the law), as well as his counseled 2012 motion, and which might provide a viable alternative avenue for testing.

25.    Moreover, Mr. Allen's former counsel should not have allowed respondent to behave in this matter, nor should former counsel have abandoned Mr. Allen's claims without challenging respondent's assertions at a hearing.    At minimum, counsel should have refiled Mr. Allen's motion and responded to respondent's belated and facially untrustworthy evidence.

26.    As demonstrated in the accompanying memorandum of law, this Court should grant Mr. Allen's leave to appeal the lower court's denial of his motion. As a threshold matter, the lower court should have held a hearing to resolve these claims. At a hearing, the actual status of the items sought to be searched would have been established. Moreover, the basis for the NYPD's assertion that it could not find the evidence and (at least implicitly) needed not expend any further energy would have been tested. Furthermore, Mr. Allen's additional claim of ineffective assistance of appellate counsel could have been explored. An additional error that supports the view that the motion court did not give Mr. Allen's motion the attention and analysis it was due is that court also relied upon pre-amended C.P.L. § 440.30 law in denying the motion, suggesting that it was unaware that Mr. Allen could pursue relief even though he pled guilty. *See* Decision at 3 ("Given that this defendant plead [sic] guilty, it is clear that he cannot avail himself of this statute.").

WHEREFORE, for these reasons, as well as those in the accompanying Memorandum of Law, this Court should grant William Allen leave to appeal from the order of the Supreme Court, Bronx County (Carter, J.), denying his motion, without a hearing, to vacate his conviction on the basis of DNA testing.

Dated:    New York, New York
          February 13, 2025

                                    _____
                                    WILL A. PAGE, ESQ.

9

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION, FIRST DEPARTMENT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, <br> *Respondent,* <br><br> — against — <br><br> WILLIAM ALLEN, <br> *Defendant-Petitioner.* | MEMORANDUM OF LAW (C.P.L. § 460.15) <br><br> Ind. No. 623-1983 (Bronx County) AD No. 2023-04645 |

## ARGUMENT

> Mr. Allen's Motion For DNA Testing Could Not Be Denied Without Holding A Hearing, Particularly After The Extraordinary Delay Accompanying Respondent's Provision Of Information About The Location Of The Items To Be Tested And Respondent's Failure To Address Specific Sources Of Isolated DNA Known To Respondent For Decades.

William Allen has sought exoneration through DNA testing, per C.P.L. § 440.30, since 2006. Indeed, when the statute was amended in 2012 to allow those who pled guilty to nonetheless seek such testing, Mr. Allen, through prior counsel, quickly renewed his request for court-ordered DNA testing. Half a decade later, in 2018, respondent provided a cursory affidavit claiming that the items to be tested could not be found. Prior counsel, relying on that affidavit, declined to refile the § 440.30 motion, which had itself become lost in the system during its pendency. Though Mr. Allen refiled *pro se*, the motion court denied his request without even holding a hearing, despite respondent's delay and despite the facial inadequacy of respondent's affidavit.

This matter is a stark example of the adage: justice delayed is justice denied. For the motion court to resolve Mr. Allen's years-long attempt to have the state's forensic evidence tested by denying the motion without a hearing is not simply disheartening, it is reversible error warranting this Court's intervention. Not only would Mr. Allen have been able to test respondent's lackluster affidavit at a hearing, but he would have been able to pursue his claim that prior counsel was ineffective for abandoning the motion. This is particularly true, on both counts, given the affidavit's facial inadequacy: it made no mention of the stored DNA held by the lab that originally tested the forensic evidence—Lifecodes. Simply put, a hearing was necessary to resolve the motion and protect Mr. Allen's due process rights. This Court should grant Mr. Allen's request for permission to appeal the motion court's denial of his C.P.L. § 440.30 motion for DNA testing. C.P.L. § 440.30(5); U.S. Const. amends. V, XIV; N.Y. Const. art. I, § 6.

## A.    The Affidavit—Which Showed a Lack of Thoroughness and Diligence— Was Insufficient to Meet Respondent's Burden of Showing The Evidence Was Lost or Destroyed.

Courts have found affidavits asserting that evidence for testing is lost or destroyed sufficient when they set forth "diligent but unsuccessful efforts to locate evidence" to be tested. *People v. Williams*, 128 A.D.3d 569 (1st Dep't 2015) (referring to "detailed affidavits by personnel from the District Attorney's Office, the Office of the Chief Medical Examiner and the Police Department"). The affidavit in this case simply does not meet that standard. First, the NYPD officer who "searched" for the items did not explain why the single set of searches on a single day was thorough and exhaustive.

No explanation was given as to why these particular locations were searched as opposed to others, or why the court should be satisfied that the single set of searches was sufficient. Of course, the affidavit was also facially inadequate. Had the officer attested that the search was thorough and complete, it would have been untrue. This is because absolutely no mention of the stored DNA data at Lifecodes was made in the officer's affidavit. Given respondent's decades of knowledge regarding that stored DNA, any claim the search was thorough was disingenuous.

To amplify this point, the prosecutor assigned to the original § 440.30 motion from 2006 specifically referenced attempts to locate the Lifecodes DNA—but noted the District Attorney was awaiting a response to their inquiries. Opp'n to first C.P.L. § 440.30 at 3, 5 ("ADA Singer . . . request[ed] information on the status of the nylon membranes created by Lifecodes Corporation in connection with this case. She is awaiting a response."). It is unreasonable for the District Attorney to outsource DNA testing and storage but then ignore that source of evidence when it is inconvenient.

**B.    Given The Glaring Issues With The Affidavit, Prior Post-Conviction Counsel Should Have Re-Filed Mr. Allen's Motion With Response.**

It certainly would have been better had prior counsel endeavored to move Mr. Allen's motion forward during the five years that it lingered. That it was eventually lost by the entire legal system is proof enough of that. But more importantly, given that the affidavit claiming the prosecution could not find the evidence said nothing of the Lifecodes stored DNA—a source that prior counsel specifically sought in the counseled

motion—it was inappropriate to abandon the motion. Counsel should have refiled the motion and questioned, at least, the affidavit's facial untrustworthiness. The lack of diligence on the part of respondent was also ample ground to challenge the belated claim that the evidence could not be located.

**C.    At Minimum, A Hearing Was Necessary To Resolve The Motion.**

If the motion judge had given Mr. Allen's request the attention it was due, then a hearing would have been ordered. C.P.L. § 440.30(5). The cursory nature of the motion's resolution is punctuated by the judge's reference to pre-amendment law denying DNA testing to those that pled guilty. *See* Decision at 3 (Exh. C). But glaringly, at risk of over-repetition, the judge should have been troubled by the lack of any efforts to retrieve the stored Lifecodes DNA. Moreover, it is unclear how the judge could have any comfort that a single set of inquires on a single day—years before the affidavit was produced—met respondent's burden. *Cf. People v. Hargrove*, 162 A.D.3d 25, 68 (2d Dep't 2018) ("[T]he People [] responded that the samples could not be located due to Hurricane Sandy. Incredibly, the People take the position on appeal that there is no evidence that the blood evidence no longer exists and that the defendant has never been precluded from testing it."); *Newton v. City of New York*, 738 F. Supp. 2d 397, 402 (S.D.N.Y. 2010) (noting similar problems with locating evidence: "the rape kit was returned to storage at the Property Clerk Division of the New York City Policy Department ("NYPD") [in 1988], where it was subsequently misplaced until 2005[;]" subsequent testing exonerated Mr. Newton).

Thus, by failing to test any of respondent's conclusory assertions or to allow Mr. Allen to test the facially inadequate affidavit at a hearing, the court erred.

## CONCLUSION

For the reasons given above, Mr. Allen should be granted permission to appeal to this Court. His decades long attempt to have the forensic evidence in this case tested should not have ended by cursory denial after years of neglect and delay on the part of respondent.

CAPRICE R. JENERSON
*Attorney for Defendant-Appellant*

By:    WILL A. PAGE, ESQ.
        *Supervising Attorney*
        wpage@oadnyc.org

OFFICE OF THE APPELLATE
DEFENDER
11 Park Place, Suite 1601
New York, New York 10007
(212) 402-4100

FILED: APPELLATE DIVISION - 1ST DEPT 12/19/2024 10:04 AM    2023-04645
NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 12/19/2024

# Supreme Court of the State of New York

## Appellate Division, First Judicial Department

BEFORE:    Hon. Jeffrey K. Oing
              Justice of the Appellate Division

---

| | |
|---|---|
| The People of the State of New York,<br>        Respondent, | Motion No.    2023-04071<br>Ind. No.      623/1983<br>Case No.    2023-04645 |
|             -against- | **ORDER** |
| William Allen,<br>        Defendant. | |

---

Defendant-appellant having previously moved for reargument of the decision and order of this court (Jeffrey K. Oing, J.) entered on September 23, 2021 (Motion No. 2021-02201), which (i) denied defendant's motion for a certificate, pursuant to Criminal Procedure Law sections 450.15 and 460.15, granting him leave to appeal from the order of the Supreme Court, Bronx County, entered on or about April 26, 2001, and (ii) denied the request for poor person relief and assignment of counsel as academic,

And upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon, this court (Jeffrey K. Oing, J.) granted on August 3, 2023 (Motion No. 2022-02555) the motion to reargue to the extent of vacating the certificate denying leave, pending submission of additional papers on the motion, and granted the defendant poor person relief, pursuant to CPL 380.55(2), and assigned Caprice R. Jenerson, Esq., Office of the Appellate Defender, 11 Park Place, Suite 1601, New York, New York, 10007, Telephone No. 212-402-4100, for purposes of submitting the aforesaid additional papers seeking leave to appeal pursuant to CPL sections 450.15 and 460, and directed that such papers shall be submitted within 60 days from the date of entry of the order,

And the Office of the Appellate Defender having moved for a 90-day extension to submit additional papers in order to properly review, evaluate, and effectively assist the defendant-appellant with his motion,

Now upon reading the papers with respect to the motion, and due deliberation having been had thereon, this court (Jeffrey K. Oing, J.), grants the motion to the extent of providing a 60-day extension from the date of the entry of this order.

Dated: December 18, 2024
      New York, New York

Entered: December 19, 2024

                                    Hon. Jeffrey K. Oing
                                    Associate Justice

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:  FIRST DEPARTMENT
- - - - - - - - - - - - - - - - - - - - - -X
THE PEOPLE OF THE STATE OF NEW YORK,
                        Respondent,

                                                    NOTICE OF MOTION FOR AN
        -against-                                   APPLICATION FOR A
                                                    CERTIFICATE GRANTING
                                                    LEAVE TO APPEAL
WILLIAM ALLEN,

                        Defendant-Appellant          Ind. No.  623/83
- - - - - - - - - - - - - - - - - - - - - -X

RECEIVED
JUN 2 8 2021
Appellate Division, First Dept

        PLEASE TAKE NOTICE that the above named Defendant-Appellant will make
application before the Honorable _____, Justice of the Supreme
Court, Appellate Division, First Department, Located at 27 Madison Avenue, New York,
NY 10010, on the 12th day of July, 2021, at 10:00 o'clock in the forenoon of that
day or as soon thereafter as the application pursuant to Criminal Procedure Law
sections 450.15, 460.15 and this Court's Rules Section 670.16 (e), can be heard for
a certificate granting leave to appeal to this Court from an order of the Supreme
Court, Bronx County, John W. Carter, SJC. dated April 26, 2021 denying defendant's
CPL Sections 440.30 (1-a)(a)(2) and CPL 440.10(1)(g-1) motion directing that DNA
testing be performed on evidence previously obtained in defendant's case and to
look for the lost DNA evidence in the defendant's 1983 case for a second time since
there is absolutely no evidence that the Bronx County District Attorney's Office
looked for said DNA evidence back in 2006.

Dated: May 14, 2021
        Fallsburg, New York

                                            Respectfully submitted,


                                            _William Allen_____
                                            Defendant-Appellant

To: Clerk, Appellate Division
    First Department
    Attn: Head Clerk's Office
    27 Madison Avenue
    New York,  NY   10010


Hon. Darcel D. Clark, District Attorney
Office of the District Attorney
Bronx County
Bronx, NY   10451


*Please note: that defendant-appellant did not receive Judge John W. Carter's
            Decision and Order and Notice of Entry from Darcel D. Clark, District
            Attorney, Bronx County until May 24, 2021, see attached Notice of Entry.

Exhibit B

PROCEDURAL HISTORY OF THE CASE

    5.     In February of 1983 defendant-appellant was arrested for a Rape and
Robbery that was committed on Ms. Georgette Webbert on the night of January 5, 1983
and was convicted by a jury trial in August of 1983. On May 19, 1988 defendant-
appellant's conviction was reversed unanimously by the Appellate Division First
Judicial Department on an identification issue and defendant-appellant was returned
back to Court for retrial/and or new trial. See People v. Allen, 140 A.D. 2d 229
(1st Dept. 1988).

    During this time (retrial appearance) the defendant-appellant was asked by the
Bronx County District Attorney's Office would defendant-appellant be willing to take
a DNA test and this defendant-appellant agreed hoping to finally prove my innocence.
At that time defendant-appellant was more then likely <u>one of</u> the first person in the
State of New York to take the DNA test.  So, on or about August/and or September of
1988 I took said DNA test by providing a blood sample for the "Lifecode Corperation",
this procedure had taken place in the presence of the two (2) arresting detectives,
(I.e. Detective Stephanie Walker and her partner the name of this particular detective
is unknown to defendant-appellant at this time).

    On October 25, 1988 Lifecodes sent a letter to the Bronx County District
Attorney's Office informing them of the results.  According to Lifecodes, Detective
Stephanie Walker had provided the lab with four evidentiary items:  (1) 1 pair white
underpants with strawberries, (2) seminal fluid reag. packet, (3) 1 plastic jar with
saliva, and (4) 1 EDTA blood tuba; 1 envelope with pubic hair std. vaginal smear
slides.  The 10/25/88 letter from Lifecodes Re: Lifecodes Case # : FI14289 at 1)
Lifecodes reported that it had tested the evidence, but found that no DNA comparisons
could be made since "an insufficient amount of high molecular weight human DNA was
isolated for DNA - Print analysis" from the underpants and the seminal fluid reag.
Packet. Lifecodes indicated that it did not test the plastic Jar with Saliva.
Lifecodes repackaged the evidence and sent it back to the District Attorney. Lifecodes
added, "the DNA isolated in this case is retained on a nylon membrane(s) at Lifecodes
and can be made available for additional analysis."

    On October 24, 2012 a motion pursuant to C.P.L. Sections 440.30 (1-a) (a)(2),
and C.P.L. 440.10 (1)(g-1) directing that DNA testing be performed on evidence
previously obtained in defendant-appellant's 1983 case (623/83).  Said motion was
filed on defendant-appellant's behalf by defendant-appellant's attorney at the time,
Jan Hoth, Esq. from the Center For Appellate Litigation, 120 Wall St. New York, NY 10005.

    On May 28, 2013 a Sergeant Ralph Charles who at the time worked in the Bronx

(2)

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:  FIRST DEPARTMENT
- - - - - - - - - - - - - - - - - - - -X
THE PEOPLE OF THE STATE OF NEW YORK
                     Respondent.

           -against-

WILLIAM ALLEN,

                     Defendant-Appellant.
- - - - - - - - - - - - - - - - - - - -X

AFFIDAVIT IN SUPPORT OF
APPLICATION TO JUSTICE OF
APPELLATE DIVISION FOR
CERTIFICATE GRANTING
PERMISSION TO APPEAL TO
APPELLATE DIVISION

STATE OF NEW YORK    )
                    )ss:
COUNTY OF SULLICAN  )

I, William Allen, being duly sworn deposes and says:

1.     I am the Defendant-Appellant in the above titled action.

2.     This affidavit is submitted in support of an application pursuant to Criminal Procedure Law Sections 450. 15, 460.15 and 670.16(e), for a certificate granting leave to appeal to this Court from an Order of the Supreme Court, Bronx County, (John W. Carter, SJC) dated April 26, 2021 denying defendant's CPL Sections 440.30(1-a)(a)(2) and CPL 440.10(1)(g-1) motion directing that DNA testing be performed on evidence previously obtained in defendant's case and to look for the lost DNA evidence in the defendant's 1983 case for a second time since there is absolutely no evidence that the Bronx County District Attorney's Office looked for said DNA evidence back in 2006.

3.     This application is brought on by Notice of Motion.

4.     In accordance with the requirements of this Court's Rules Section 670.16(e), the following information is supplied:

(a)    The applicant is William Allen, Sullivan Correctional Facility, 325 Riverside Drive, P.O. Box 116, [Sullivan County], Fallsburg, New York 12733-0116. The People are represented by Darcel D. Clark, District Attorney of Bronx County, 198 East 161st Street, Bronx, New York 10451.

(b)    Defendant-Appellant's Bronx County Indictment Number is 623/83.

(c)    The question of law or fact which it is claimed under Newton v. City of New York, 2015 WL 795125 at 2-3 (2nd Cir. February 26, 2015), 779 F. 3d 140. That the Bronx County District Attorney's Office should at least have the Bronx Borough Property Clerk's Office look for the lost DNA evidence in defendant-appellant case for a second time.

(d)    No prior application for such certificate has been made.

(1)

Borough Property Clerk's Office, (located at 215 E. 161st Street, Bronx, NY 10451)
was searching for the requested DNA evidence in defendant-appellant's 1983 case, but
was unable to locate any of said requested DNA evidence which eventually convicted
this defendant-appellant.  It actually took the Bronx County District Attorney's
Office five (5) years to finally get an affidavit from the NYPD (Bronx Borough
Property Clerk's Office).  On March 19, 2018 I received a letter from my attorney at
the time Jan Hoth, Appellate Counsel and enclosed with her letter was a copy of said
affidavit signed by Sgt. Ralph Charles attesting to the lost of the DNA evidence in
my case.  Ms. Hoth had also informed me that there was really nothing left for her
to do and said " I am sorry, but there is really nothing left for me to do.  i wish
you the best of luck in all of your own actions."

### THE MOTION PURSUANT TO CPL SECTIONS 440.30 AND 440.10

Therefore, on July 25, 2018 defendant-appellant filed a pro se C.P.L. Sections
440.30(1-a)(a)(2), and C.P.L. 440.10(1)(g-1) motion in the Bronx County Supreme Court
asking the Court to have the Bronx County District Attorney's Office to at least have
the Bronx Borough Property Clerk's Office look for the lost DNA evidence in defendant-
appellant case for a second time.  Which this request falls right in line with the
Newton Court, [i.e., Newton v. City of New York, 779 F. 3d 140] (2nd Cir. 2015).

The Bronx County District Attorney's Office is refusing to look for the lost
DNA evidence in defendant-appellant's 1983 case for a second time because they are
saying that in 2006 a diligent search for said requested DNA evidence was done by
the Bronx County Distict Attorney's Office and the New York City Police Department.
In Assistant District Attorney T. Charles Won December 28, 2018 Affirmation In
Opposition to defendant-appellant's pro se application pursuant to CPL Section 440.30
(1-a).  ADA Won says on page 2 that "In opposing defendant's motion, Assistant
District Attorney (hereinafter"ADA") Mary Jo Blanchard submitted an affirmation
detailing the steps that had been taken by this Office and the New York City Police
Department (hereinafter "NYPD") to locate the evidence sought by defendant for DNA
testing ...Affirmation in Opposition, dated December 15, 2006,".

The People's prior affirmation submitted in response to the prior section 440.10
motion was insufficient to satisfy the burden to determine the location and existence
of the evidence to be tested. In that affirmation, the People posit only conclusory
assertions as to why the evidence had not been located, whether the evidence existed,
and where it might be located. Again see: Assistant District Attorney Mary Jo L.
Blanchard's "Affirmation In Opposition, December 15, 2006".  Although the efforts of

the People are detailed in the affirmation, the People provided no affidavits based on the personal knowledge of the evidence's location and its existence or destruction, and no official records that support such claims. The People asserted that they were awaiting responses to their inquires of Orchid Cellmark, Inc., and Bode Technologies, Inc., companies that have acquired or may contain the DNA evidence initially retained by Lifecodes, as well as confirmation from the Office of the Chief Medical Examiner as to the location and existence of the DNA evidence. Please see: ADA Mary Jo L. Blanchard's "Affirmation In Opposition, December 15, 2006", page 5. However, no further information was ever provided.

While the People stated that they intended to continue their efforts to locate the forensic evidence and would voluntarily test the evidence if they found it, id. at 6, this promise is insufficient to relieve them of their burden to document to the Court their efforts. The People are required to conduct a diligent, good faith effort to ascertain the existence of discovery property requested by the defendant, and to make that property available to a defendant. See C.P.L. Section 240.20; see generally People v. Santorelli, 95 N.Y. 2d 412 (2000). Moreover, under section 440.30(1-a), the Court must oversee the People's search and the People must submit the required documentation to this Court. A simple promise for a continued unsupervised search is simply insufficient to satisfy the People's burden. Again, according to the People their December 2006 effort to find the DNA evidence in defendant-appellant 1983 case was a "diligent search" and this is why the Courts should deny this defendant-appellant's request to look for the lost DNA evidence a second time.

> *Please note: Also enclosed is a copy of defendant-appellant's pro se motion, pursuant to CPL sections 440.30(1-a) and 440.10(1)(g-1) seeking DNA testing.

WHEREFORE, defendant-appellant is proceeding pro se, it is respectfully requested that he be afforded "liberal construction" upon the proceedings had herein and not be held to the same standards as that of a licensed and practicing attorney, and that his application/motion be liberally read and interpreted to raise the strongest arguments they suggest pursuant to the authority of Burgos v. Hopkins, 14 F. 3d 787, 790 (2nd Cir. 1994) (according, Elliot v. Bronson, 872 F. 2d 20. 21-22 [2nd Cir. 1989]); see also, Haines v. Kerner, 404 U.S. 519 (1972); Ali v. Goord, 267 A.D. 2d 520, (3rd Dept. 1999). Additionally, defendant further requests this Honorable Court's indulgence in any errors of form or procedure committed in the perfection of the instant pro se motion/application pursuant to CPLR Sections, 2001,

(4)

2002, 2004, 2005, and 2101(f).

    **WHEREFORE;** it is respectfully requested that defendant-appellant's application for certificate granting leave to appeal be granted and for any other relief that this court deem just and proper.

Respectfully submitted,

[signature] *William Allen*

[Print] *William Allen*

Sworn to before me this
10TH day of June, 2021

_____
Notary Public

RICHARD P. WISSLER
Notary Public, State of New York
No. 01WI6397622
Qualified in Orange County
My Commission Expires on September 9, 2023

(5)

Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX: PT 19
------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

                                        Indictment # 623-1983

          -against-                              **DECISION AND ORDER**

William Allen
                     Defendant.
------------------------------------------------------------------X
Honorable: John W. Carter

## PROCEDURAL HISTORY

On May 8, 1989, judgement was rendered, after the defendant plead guilty to Rape in the

First Degree (PL 135.35 [1] and Robbery in the First degree (PL 160.15 [1]). He was sentenced

to an indeterminate term of imprisonment of 6- 18 years. The defendant pled guilty to these

charges after the Appellate Division, First Department, reversed the original judgement of

conviction after a jury trial but prior to the commencement of his second jury trial on the instant

indictment. (See, People v Allen, 140 AD2d 229 (1st Dept. 1988).

On May 3, 2006, defendant represented by the Center for Appellate Litigation filed his

first motion pursuant to CPL 440.30 (1-a) seeking DNA testing be performed on items that were

vouchered in this case[1] and also sought vacatur of the conviction pursuant to CPL 440.10 1(h),

claiming that the DNA test results constituted "new evidence" and that he was actually innocent.

On December 15, 2006, the People responded detailing the steps the Bronx District Attorney's

Office [Hereinefter, BXDA] and the New York City Police Department [Hereinafter, NYPD]

---

    According to the People, the items were vouchered under Property Clerk Invoice No B302254
which contained a Rape Evidence Kit and one white pantie. (Affidavit of Sgt. Ralph Charles
January 12, 2018)

took to locate the vouchered items that defendant sought to be tested. To date, those items, despite a diligent search have not been located.

On December 20, 2006, Justice Seewald denied defendant's motion, rejecting the claims that he was entitled to relief under both 440.30 (1-a) and 440.10 (1)(g). On January 29, 2008, the Appellate Division, First Department, affirmed the denial of that CPL 440 motion. (People v Allen, 47 AD3d 543 (1st Dept 2008).

On October 24, 2012, defendant again represented by the Center for Appellate Litigation moved for an order of the Supreme Court Bronx County, directing that the DNA testing be conducted on the same items of evidence referenced in the defendant's motion dated May 3, 2006.

By letter dated June 12, 2013, the NYPD Deputy Chief of the Property Division, informed the BXDA that the property associated with this case was searched for in two separate facilities with negative results. The letter listed the various searches that had been conducted by the NYPD for the items. The BXDA indicated to appellate counsel at the time, Jan Hoth, that they were attempting to obtain sworn affidavits from the NYPD personnel who had conducted the searches. On July 2013, Judge Marvin took the motion off the court's calendar while awaiting the People's affidavits. On January 12, 2018, Sgt Ralph Charles affirmed that he had conducted various searches for the property in this case, specifically the sexual evidence kit and white pantie, but was unable to locate the property. In February, 2018, the Bronx County Clerk's Office indicated that they had no record of the outstanding motion and requested the motion be re-filed for a court to review it. Defendant then filed pro-se papers dated July 14, 2018, again seeking to have the above referenced evidence tested for DNA pursuant to CPL 440.30 (1-a) and various other claims including that he is actually innocent, that his appellate counsel, Ms. Hoth

was ineffective and that his constitutional rights were violated by the BXDA and his prior

attorney for consenting to the People's request for time to conduct a search for the requested

items and the NYPD for not having found the DNA evidence in this case.

That motion was assigned to Judge Shawndya Simpson who subsequently became ill,

went on medical leave and then retired from the bench. The administrative judge of Bronx

County then assigned the motion to this court immediately prior to the COVID 19 pause. After

some difficulty acquiring the necessary papers to address the motion, the following is the court's

decision.

CPL 440.30 (1-a), which provides a procedure for convicted defendants to seek DNA

testing, is inapplicable to persons, such as the defendant, who have pled guilty. (People v

Foxworth, 81 A.D.3d 547 (1st Dept 2011); People v Lebron, 44 AD3d 310 [1st Dept 2007], lv

denied 9 NY3d 1007(2007); People v Byrdsong, 33 AD3d 175(2d Dept 2006) lv denied 7 NY3d

900 (2006). Given that this defendant plead guilty, it is clear that he cannot avail himself of this

statute.

It is the People's burden to show that the evidence sought to be tested cannot be located

and is thus no longer available for testing (People v Garcia, 65 AD3d 932 (1st Dept 2009), lv

denied 13 NY3d 907 (2009). The People provided a detailed affidavit setting forth the efforts

they and the NYPD made in attempting to locate the evidence in question.(See, People's

response, Exhibit 6, Sgt Charles Aff't 1/12/18). Thus, the People have satisfied their burden and

the defendant has failed to show, in this instance, that the People did not adequately establish

that the evidence cannot be located. (People v Dorsey, 170 A.D.3d 417 (1st Dept 2019).

The defendant's remaining claims are denied. A court may summarily deny a motion to

vacate a judgment of conviction where "the motion is based upon the existence or occurrence of

facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts...." CPL § 440.30(4)(b). Pursuant to CPL 440.30 (4) (d), the court may deny the motion without conducting a hearing if an allegation of fact essential to support the motion "is made solely by the defendant and is unsupported by any other affidavit or evidence, and ...under all the circumstances attending the case, there is no reasonable possibility that such allegation is true." The defendant's motion simply states that his attorney never made any legal argument to Judge Massaro at any point during the five year pendency and refused to re-file the motion. That claim is controverted by his own evidence and not sufficient to sustain his burden here. Mere assertions that an attorney's performance was deficient are simply not enough. See, People v Johnson, 292 AD2d 284 (1st Dept. 2002); People v Gill, 285 AD2d 7 (1st Dept 2001).

Under 22 NYCRR § 600.18, defendant has the right to apply for a certificate granting leave to appeal from an order denying a motion to vacate a judgment made pursuant to C.P.L. §440.10 and defendant has the right to apply, if unable to pay the cost of an appeal, for leave to appeal as a poor person.

Accordingly, defendant's motion is denied. This constitutes the decision and order of the court.

Dated: April 26, 2021
Bronx, New York

John W. Carter, SJC

Exhibit D

SUPREME COURT OF THE STATE OF NEW YORK
BRONX COUNTY: CRIMINAL TERM - PART 31
-------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

RECEIVED

DEC 28 2018

SUPREME COURT CLERK'S OFFICE
BRONX COUNTY

                   Respondent,

      - against -                        **AFFIRMATION IN OPPOSITION**
                                             Indictment No. 623/83

WILLIAM ALLEN,                          (Simpson, J.)

                    Defendant.
-------------------------------------------------------------------X

      I, T. CHARLES WON, under penalty of perjury and pursuant to CPLR Rule 2106, hereby

affirm and state:

      1.     I am an Assistant District Attorney in the Office of **DARCEL D. CLARK**, District

Attorney of Bronx County. I submit this affirmation in opposition to defendant's pro se application,

pursuant to CPL § 440.30(1-a), seeking DNA testing.

      2.    I make this affirmation on personal knowledge and on information and belief based

on records in this Office and the Clerk's Office, Supreme Court, Bronx County, which I believe to

be true and accurate.

      3.     On May 8, 1989, in Supreme Court Bronx County (Hinkson. J.), a judgment was

rendered convicting defendant, after a guilty plea, of Rape in the First Degree (Penal Law §

130.35[1]), and Robbery in the First Degree (Penal Law § 160.15), and sentencing him to an

indeterminate term of imprisonment of from six to eighteen years.[1]

      4.    In motion papers dated May 3, 2006, defendant, through counsel, Jonathan M.

---

[1] On May 19, 1988, the Appellate Division, First Department, had reversed the original judgment of conviction, rendered after a jury trial, and ordered a new trial upon deciding that the trial court had erred by requiring defendant to testify if he wished to display his teeth to the jury. See People v. Allen, 140 A.D.2d 229 (1st Dept. 1988). Defendant entered his guilty plea before the commencement of his second jury trial on this indictment.

Kirshhaum, Esq., of the Center for Appellate Litigation, requested, pursuant to CPL § 440.30( 1-a)

and the Due Process clause, that the deoxribonucleic acid ("DNA'") testing be performed on the

items that were submitted, in preparation for an expected second trial on Bronx County Indictment

Number 623/83, to Lifeccodes Corporation in 1988. Defendant also sought vacatur of his judgment

of conviction, pursuant to CPL § 440.10 (1)(h) and (g), claiming that the DNA test results constitute

"new evidence," and that he is actually innocent and, thus, convicted in violation of the state and

federal constitutions.

     5.    In opposing defendant's motion, Assistant District Attorney (hereinafter "ADA")

Mary Jo Blanchard submitted an affirmation detailing the steps that had been taken by this Office

and the New York City Police Department (hereinafter "NYPD") to locate the evidence sought by

defendant for DNA testing (Exhibit 1, Affirmation in Opposition, dated December 15, 2006, ¶¶ 10-

16).

     6.    In a Decision and Order dated December 20, 2006, this Court (Seewald, J.), denied

defendant's motion without prejudice. Relying on People v. Byrdsong, 33 A.D.3d 175 (2d Dept.

2006), the Court found that "a defendant who has pleaded guilty - as opposed to being found guilty

after trial - is not entitled to relief pursuant to CPL §440.30(1-a)" (Exhibit 2, Decision and Order

dated December 20, 2006, pp. 1-2). The Court also rejected defendant's claim that he is entitled to

relief pursuant to CPL § 440.10(1)(g) because the language of the statute limited relief to "evidence

discovered since the entry of a judgment based upon a verdict of guilty after trial." Accordingly, the

court concluded that since defendant had pled guilty, he was not entitled to relief under either statute

(Exhibit 2, p. 2).[2]

7.      On January 29, 2008, the Appellate Division, First Department, affirmed the denial of the CPL Article 440 motions.  People v. Allen, 47 A.D.3d 543 (1st Dept. 2008).

8.      In papers dated October 24, 2012, defendant through counsel, Jan Hoth, Esq., of the Center for Appellate Litigation, moved the Supreme Court, Bronx County, to order DNA testing be performed, pursuant to CPL § 440.30(1-a)(a)(2), upon evidence collected in the instant case (Exhibit 3, defendant's motion dated October 24, 2012).

9.      Upon information and belief, ADA Rachel Singer, then DNA Coordinator for this Office, forwarded NYPD voucher No. B302254 to NYPD Property Division.  The voucher listed Rape Evidence Kit and a piece of clothing related to the instant indictment and was found inside this Office's case file for People v. William Allen, Indictment Number 623/83 (Exhibit 4, NYPD Voucher No. B302254).

10.     In a letter dated June 12, 2013, Jack J. Trabitz, Deputy Chief of the New York City Police Department (hereinafter "NYPD") Property Clerk Division, informed this Office that the "property associated with the case of the People v. William Allen . . . invoiced on January 3, 1983, from the 43rd Precinct as arrest evidence," and "listed under invoice #B3022454" was "searched for at the Property Clerk Division's Pearson Place Warehouse and the Bronx Borough Office" with "[n]egative results."  The letter listed the various searches that had been conducted for the items listed under Property Invoice #B3022454 (Exhibit 5, Deputy Chief Jack J. Trabitz's letter dated June 12, 2013).

---

[2] The court noted that if the materials were located and the People's voluntary testing provided evidence favorable to defendant, defendant could renew his motion without prejudice (Exhibit 2, p. 2, n. 2).

11.    Shortly thereafter, respondent informed both the Supreme Court, Bronx County (Marvin, J.), and Ms. Hoth of Deputy Chief Trabitz's letter dated June 12, 2013, and that respondent was attempting to obtain a sworn affidavit from the NYPD Property Clerk Division personnel who had conducted the search for NYPD voucher No. B302254.

12.    On or about July 2013, the Supreme Court, Bronx County (Marvin, J.), took the motion off the Court's calendar to await the People obtaining an affidavit concerning the search for the DNA evidence from the NYPD personnel who had conducted the search.

13.    This Office made numerous attempts to learn the name(s) of the personnel that conducted the search for NYPD voucher No. B302254. Finally, on January 12, 2018, respondent received an affidavit from Sergeant Ralph Charles of the Bronx Borough Property Clerk's office. In the affidavit, Sergeant Charles stated that, on or about May 28, 2013, he had conducted various searches for the property "listed under Invoice # B302254 as a 'sexual evidence kit' and one white pantie" but was "unable to locate the property" or "any NYPD paperwork indicating where the property could be located" (Exhibit 6, Sergeant Ralph Charles's Affidavit, dated January 12, 2018). A copy of the affidavit was forwarded to Ms. Hoth.

14.    On or about February 9, 2018, respondent was informed by the Clerk's Office, Supreme Court, Bronx County, that the Clerk's Office had no record nor the paperwork related to defendant's October 2012 motion. Respondent was further informed that defendant, therefore, needed to re-file the motion if he still wanted this Court to review it. Subsequently, respondent informed Ms. Hoth, of the information provided by the Clerk's Office.

15.    Now, in pro se motion papers dated July 14, 2018, defendant, once again, seeks to have the DNA evidence from his case tested pursuant to CPL § 440.30(1-a), and seeks an order

requiring the NYPD to disclose the whereabouts of the DNA evidence. Defendant further makes various claims alleging that: (1) he is actually innocent; (2) his prior attorney, Jan Hoth, Esq., who handled the prior CPL Article 440 motion was ineffective; and (3) his constitutional rights were violated by the DA's Office, his prior attorney, and the NYPD by not having timely found the DNA evidence in question.

16.     While, pursuant to CPL § 440.30(1-a), defendant does not "bear the burden of showing that the specified DNA evidence exists and is available in suitable quantities to make testing feasible," to date, despite diligent searching, the People have not been able to obtain confirmation of either the existence (and, therefore, the location) or destruction of the evidence that defendant wants tested. The details set forth in the People's response to defendant first CPL § 440.30(1-a) motion and the affidavit signed by Sergeant O'Connor provide sufficient basis for this Court to conclude that diligent, but unsuccessful, attempts have been made to locate the DNA evidence in question, and thus, that defendant's motion should be denied.[3] See People v. Williams, 128 A.D.3d 569 (1st Dept. 2015) ("The People presented detailed affidavits by personnel from the District Attorney's Office, the Office of the Chief Medical Examiner and the Police Department setting forth their diligent but unsuccessful efforts to locate evidence from defendant's 1984 trial, on which defendant sought to have DNA testing performed. This satisfied the People's burden to show that the evidence could no longer be located and was thus no longer available for testing"); People v Garcia, 65 A.D.3d 932, 933 (1st Dept. 2009) ("The People presented detailed affidavits by the detectives and the prosecutor, based on personal knowledge, setting forth their diligent but

---

[3] CPL § 440.30(1-a) does not provide any remedies nor course of action for the remainder of defendant's claims. As the issues do not relate to his trial nor the judgment of conviction, this Court should not liberally construe his motion as one seeking a vacatur of the judgment of conviction.

5

unsuccessful efforts to locate certain items recovered in 1995 from the scene of a homicide. This satisfied the People's burden to show that the evidence on which forensic DNA testing was to be performed could no longer be located and was thus no longer available for testing").

**WHEREFORE**, the People of the State of New York respectfully request that defendant's motion be denied in all respects.

Dated: Bronx, New York
      December 28, 2018

                                          T. CHARLES WON
                                          Assistant District Attorney

6

Exhibit E

SUPREME COURT OF THE STATE OF NEW YORK
BRONX COUNTY: CRIMINAL TERM: PART A

----------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK                    :

      -against-                                              :

WILLIAM ALLEN,                                         :

            Defendant-Movant.                     :

----------------------------------------X

NOTICE OF MOTION

Ind. No. 623/83

Bronx County

Please Take Notice that upon the annexed affidavit of William Allen, sworn to the 23rd day of July, 2018, (and documents/exhibits attached thereto) and upon the accusatory instrument and all other papers filed and proceedings herein, defendant will move this Court, Part __A__ thereof, at the Courthouse located at 851 Grand Concourse, Bronx, New York.10451, on the 6th day of August, 2018, at 9:30 in the morning, or soon thereafter as counsel can be heard, pursuant to C.P.L §440.30 (1-a)(a)(2), and C.P.L. 440.10(1)(g-1) directing that DNA testing be performed on evidence previously obtained in defendant's case.  Please note: on October 24, 2012 a C.P.L. §440.30 (1-a)(a)(2) motion was filed on defendant's behalf by defendant's attorney at the time, Jan Hoth, Esq. from the Center For Appellate Litigation, 120 Wall Street, New York, NY 10005 Tel. (212) 577-2523.

The district attorney's office had never responded to said C.P.L §440.30 motion that was filed in your Honor's Court and finally after five and a half (5½) years of waiting on some kind of legal response from the district attorney's office the distirct attorney finally got an affidavit from the New York City Police Department attesting to the lose (or was unable to locate) of the DNA evidence in defendant's case (Please see attached letter from Ms. Hoth dated March 19, 2018 and affidavit from Sgt. Ralph Charles of the NYPD Bronx Borough Property Clerk's Office as Exhibit A).

The problem that Sgt. Charles was unable to locate the DNA evidence in defendant's case is one serious issue as fan as this defendant is concern, but the search for the requested DNA evidence by the defense had already taken place by Sgt. Charles on May 28, 2013, five (5) years ago with only just that one day to look for said DNA evidence. The question that the defendant is respectfully asking this Court is why did it take the Bronx County District Attorney's Office so many years to finally get an affidavit from the NYPD, nor was there any paperwork indicating

where the DNA property in defendant's case could be located.

So, the defendant is respectfully asking the court to protect his First Amendment right of access to the courts which the Bronx County District Attorney's Office and the NYPD (Bronx Borough Property Clerk's Office) has denied this defendant for over five (5) years on one motion. And to also protect this defendant's Fourteenth Amendment right to due process and equal protection under the law, and to order the police to disclose the last known physical location of the evidence (property invoice #B302254) used in this defendant's case to convict this defendant during his trial back in 1983. Because the defendant is taking the position of "actual innocence" today as he did back in 1983 during defendant's trial.

Also, please let it be noted that the district attorney's office did not protect the defendant's constitutional rights by allowing Sgt. Charles to withhold the enclosed affidavit for five years. The district attorney's office was negligent showing very strong signs of prosecutorial misconduct as well as prosecutorial abuse because the evidence is exculpatory as far as to what the defendant is complaining about.

And for defense counsel to allow (by consent) the district attorney's office to adjourn the hearing of the defendant's motion for 60 days so that the "police" could locate the "evidence" is understandable (please see enclosed letter dated March 22, 2013 by Ms. Jan Hoth, Esq. as Exhibit B). But to allow this adjournment to go on by the district attorney's office for over five (5) years knowing that the defendant's federal Habeas corpus (USC 2254) appeal for defendant's instant conviction (Ind.# 1826/00) has been held in abeyance since June, 2010. (Please see attached August 17, 2015 letter to defendant & August 17, 2015 letter to the Hon. Laura Taylor Swain who is the judge defendant's appeal [USC 2254] is in front of, both letters are from Ms. Hoth marked as Exhibit C). Then to inform me in her March 19, 2018 letter "... However, the judge who was originally assigned to hear the motion has retired and the court lost the file. Under the circumstances, in order to get the issue heard, I would need to either re-file the old motion or file a new one. However, given the nature of the affidavit, there simply is no reason to re-file the motion".

In April of 2018, I sent a certified letter to Ms. Hoth explaining to her a number of issues, but I needed the name of the "retired judge" who was originally assigned to hear my CPL 440.30 motion that Ms. Hoth had filed on this defendant's

behalf. (Please see attached letter dated April 12, 2018 from the defendant to Ms. Hoth marked as Exhibit D). In May of 2018 Ms. Hoth responded to defendant's April 12, 2018 letter informing defendant that it was a misunderstanding on her part due to "misinformation" she had been given. That the judge who was assigned to hear defendant's motion was the Hon. Dominic Massero and he is still an "active judge", (Please see attached May 3, 2018 letter from Ms. Hoth marked as Exhibit E).

In closing on this point as my assigned attorney Ms. Hoth wished me "good luck", therefore, leaving this defendant to fend for himself so far as filing this C.P.L. §440.30 motion pro se with this court. Ms. Hoth never made any kind of legal argument to Judge Massero at any point during five and a half years (5½) that the people never ever even made an attempt to respond to the defendant's C.P.L. §440.30 motion. *Please note: That Ms. Hoth filed a motion (CPL §440.30) on the defendant's behalf and excepted only an affivdavit from the NYPD but received no legal response of motion practice protocol in relation to defendant's filed motion to the court let alone a response from the court. And then refused to re-file said CPL 440.30 motion. Therefore, as a matter of record and preservation this defendant has absolutely no history of a filed CPL §440.30 (1-a)(a)(2) motion in any court room within the Bronx County Supreme Court. According to Ms. Hoth it was nothing she could do about the adjournments that the assistant district attorney who was assigned to handle defendant's CPL §440.30 motion were taking. This was an act of ineffectiveness of counsel on Ms. Hoth part.

Defense counsel did not protect the defendant's constitutional rights of the 1st, 14th, and 6th amendments of the United States Constitution and N.Y. State Constitution of due process and equal protection under the law, Art. 1 Section 6 as the defendant is taking a position of actual innocence.

An order, pursuant to New York Criminal Procedure Law that are applicable to produce the defendant at any hearing conducted to determine this motion; and such other and further relief as the court may deem just and proper.


Dated:   Hamlet of Fallsburg
         County of Sullivan
         State of New York

         July 14, 2018

3

Respectfully submitted,

*William Allen*
William Allen, #03-A-4303
Defendant, Pro se
Sullivan Corr. Facility
P.O. Box 116 Loc. AN/235
Fallsburg, NY 12733-0116

To: Clerk's Office
Supreme Court
Bronx County
851 Grand Concourse
Bronx, New York 10451

Hon. Darcel D. Clark
District Attorney Bronx County
198 East 161st Street
Bronx, New York 10451

Hon. Laura Taylor Swain
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

4

SUPREME COURT OF THE STATE OF NEW YORK
BRONX COUNTY: CRIMINAL TERM: PART A

----------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK     :
                                        :       AFFIRMATION
            -against-                   :
                                        :       Ind. No. 623/83
                                        :
                                        :       Bronx County
WILLIAM ALLEN,                          :
                                        :
            Defendant-Movant.           :
                                        :
----------------------------------------X

STATE OF NEW YORK   )
                    ) ss:
COUNTY OF SULLIVAN  )

I William Allen, being duly sworn, deposes and says:

1.  I am the defendant in the above-entitled proceeding. I make this affidavit in support of a motion pursuant to C.P.L. §440.30 (1-a)(a)(2) and C.P.L. §440.10 (1)(g-1) directing that DNA testing be performed on evidence previously obtained in defendant's case once said DNA evidence is located.

2.  on or about October 24, 2012 a C.P.L. §440.30 (1-a)(a)(2) motion was filed on the defendant's behalf by then assigned counsel Jan Hoth, Esq. from the Center For Appellate Litigation. And after waiting for well over five (5) years for a response the Bronx County District Attorney's Office on or about March 19, 2018 defendant received a letter from Ms. Hoth with an affidavit from the NYPD stating that the requested DNA evidence we are asking for could not be located "...nor any NYPD paperwork indicating where the property could be located."

3.  Defendant can not say for sure whether the affidavit coming from the NYPD sworn by Sgt. Ralph Charles was actually filed in a Bronx County Supreme Court, Courtroom (The Hon. Dominic Massero) because Ms. Hoth in her March 19, 2018 letter informed defendant that the court where defendant's C.P.L. §440.30 (1-a)(a)(2) motion was filed in was actually lost by the court, (Please see attached March 19, 2018, letter from Ms. Hoth to the defendant marked as Exhibit A).

Ms. Hoth had also consistantly informed the defendant as assistant district attorney Charles - Tae Hoon Won was waiting for the affidavit from the NYPD stating that they still could not find the DNA evidence we were requesting to be tested. The District Attorney's Office never responded to our

filed C.P.L. §440. 30 motion (Please see attached letter from Ms. Hoth dated July 8, 2016 marked as Exhibit F).

Defendant is filing his own pro se C.P.L. §440.30 (1-a)(a)(2) and C.P.L. §440.10 (1)(g-1) motion asking this court to instruct the NYPD to continue to look for the requested DNA evidence "property invoice #B302254" because according to Sgt. Charles attached affidavit the first and only time he looked for said DNA evidence was on May 28, 2013. It appears to be a fact that this defendant is not the first defendant to request DNA evidence from the Bronx County NYPD evidence management system/NYPD Property Clerk Division (PCD). Therefore, the defendant is asking this court to protect defendant's constitutional rights of due process and access to the courts in violation of the Fourteenth and First Amendments of the United States Constitution. "... Newton then moved under C.P.L. §440.30 (1-a) for DNA testing of the rape kit. The district attorney responded that the medical examiner had not returned the rape kit in 1988. The kit was lost and the state court denied Newton's motion." In 1995 Newton filed a federal habeas corpus petition. Again the city informed Newton that the kit could not be found. In 1998 Newton back in state court, again sought DNA testing of the rape kit. The district attorney opposed the motion and again stated that the kit was lost. As part of the District Attorney's Opposition, an NYPD sergeant stated that the voucher describing the location of the rape kit was missing and the kit "must have been destroyed".

In 2005, Newton's lawyer asked the chief of the sex crimes bureau of the Bronx County District Attorney's Office to look again for the rape kit. This time, the district attorney found the voucher, and the NYPD's Property Clerk Division (PCD) found the rape kit "in a barrel located in the PCD's Pearson Place Warehouse in Queens".

In June 2006, the office of the Chief Medical Examiner concluded that the DNA in the rape kit did not match Newton's DNA. Newton was factually innocent. As a result of a joint motion by Newton and the District Attorney's Office, Newton's conviction was vacated. Newton had been incarcerated for more than 20 years. "For more than 10 of those years, the City of New York had told Newton the exonerative evidence no longer existed.", Newton v. City of New York, 2015 WL 795125 at 2-3 (2nd Cir. Feb. 26, 2015), 779 F. 3d 140.

5. Defendant is respectfully asking this Court to also address the 2004 addition of the New York Criminal Procedure Law Section 440.30 (1-a)(b) to direct the Bronx District Attorney's Office to provide the defendant with information of the current physical location of the specified evidence and if the specified evi-

dence no longer exists or the physical location of said specified evidence is
unknown a representation to that effect and information and documentary evidence
in possession of the Bronx County District Attorney's Office concerning the last
known physical location of such specified evidence. Because the defendant does
have the right to have a constitutionally adequate means of finding the DNA
evidence to defendant's case if it still exists.

6.  It is a known fact by the Supreme Court in the Bronx County and through-
out "the City of New York that the NYPD's evidence management system failed misera-
bly". According to court records said NYPD evidence management system has lost or
misplaced thousands of pieces of DNA evidence from so many cases.  "The court
pointed out that only about 20 percent of prosecutorial requests for pre-1988 post-
conviction evidence were satisfied. The PCD had no reliable system to determine
what evidence had been destroyed and ... as a result, evidence may have been
improperly destroyed, or as in Newton's case, reported destroyed when it had not
been.", Newton v. City of New York, supra.

7.  This defendant's case is very similar to the Newton case in a number of
ways, 1) the defendant was convicted by trial for a rape case in the Bronx County
Supreme Court in 1983, Newton was convicted in the Bronx County Supreme Court of
rape in 1985. 2) After this defendant received a unanimous reversal from the Appel-
late Division First Department on May 19, 1988 defendant agreed to take a DNA test
hoping to prove his innocence on October 25, 1988 by Lifecodes Corperation, Newton
had also taken his DNA test in 1988 more then likely by Lifecode Corporation after
filing a CPL 440.10 motion to the court (Bronx County) to conduct "forensic tests".
3) A CPL 440.30 motion was filed on defendant's behalf on October 24, 2012 reques-
ting an order from the court directing that DNA testing be performed on evidence
previously obtained in defendant's case. In March of 2018 defendant finally re-
ceived an affidavit from Sgt. Ralph Charles of the "NYPD" in the Bronx Borough
Property Clerk's Office stating that five (5) years ago "May 28, 2013" he looked
for said requested DNA evidence and that he could not find it nor was there any
record of the previous location of said evidence. Mr. Newton was also told by the
"NYPD" for 10 years that the DNA evidence in his case was lost. Could not be found,
then he was told that the DNA evidence in his case was destroyed. Mr. Newton had
to file at least four (4) CPL 440 motions within the Bronx County Supreme Court in
order to find the DNA evidence in his case which was used to convict him, so he
could prove his innocence and this is exactly what this defendant is trying to do,
(trying to locate the DNA evidence from defendant's 1983 case which was used to

convict this defendant so said defendant can prove his <u>actual</u> <u>innocence</u>). Please note: That this defendant has always fought to prove my innocence went to trial lost my case at trial because the assistant district attorney at defendant's trial denied this defendant his legal right to display my height and mouth to the jury. These two issues was very critical to the defense of mistaken identity because the complainant in defendant's case had given a distinguishing feature of her rapist that did not fit the description of this defendant, (Please see attached, the Appellate Division First Department ruling on defendant's conviction & appeal, dated May 19, 1988, marked as Exhibit G).

Also, once defendant was convinced by his assigned attorney (Mr. Arthur F.X. Henricksen) to take a plea offer by the Bronx County District Attorney's Office and that defendant would go right home once this defendant went back upstate to see the "parole board". Because defendant had a clean disciplinary record while I was doing my time upstate with very minor infractions but nothing major like "SHU" time, good programs like college, etc. So, defendant begrudgingly agreed to take a plea of 6 to 18 years with over six (6) years already in at the time of this defendant taking said plea agreement. But when defendant had went to see the probation department for the normal interview that all defendants take part of before sentencing this defendant had told the interviewing parole counselor that defendant was not guilty of the rape that defendant was locked up for and that defendant was just taking the guilty plea on the advice of defendant's attorney so that the defendant could finally go home.

Once assistant district attorney Strauss had read what defendant had said to the Probation Department in their report ADA Strauss was concern and expressed her concerns to Judge Hinkson on the day that defendant was to be sentence (May 8, 1989) right before defendant was actually sentenced. "Ms. Strauss: I have read the Probation report. The defendant made an allocution, I believe it was a sworn allocution, that, in fact, at the date and time in question, admitted to raping and robbing the complainant, Jeanette Webber, in this case. And before sentence is imposed, I ask the court again to inquire of this defendant." (Please see attached defendant's sentence transcript page three (3) dated May 8, 1989 marked as exhibit H).

And as the sentence transcript will further show defendant's attorney had to <u>again</u> advise defendant to say that this defendant was guilty. "Mr. Henrikson: I have called this to the attention of the defendant. I have advised him as to that

4

part of the report to the Probation Department." (Please see defendant's sentence transcript page four (4) dated May 8, 1989 marked as Exhibit I). So, under the "advice" of defendant's attorney this defendant plead guilty to a crime that this defendant never had committed.

Also, this is what Arthur Levitt, Supv. Probation officer wrote in his pre-sentence investigation report on or about April of 1989 and was attested to by David W. Norman, Probation Officer. Case #xs8303989 "...The defendant continues to deny his guilt. He says he pled guilty to expedite his release from prison. He remains incarcerated at Eastern Correctional Facility at Napanoch., His family circumstances remain as described in the attached report. The conclusions and out-look stated in the attached report continue to obtain." (please see defendant's presentence investigation report page two (2) dated on or about April of 1989, marked as Exhibit J). Again, this defendant has always maintained my innocence except (May 8, 1989) under the advice of defendant's counsel and this is why it is important for the NYPD to find the DNA evidence in defendant's case because then said evidence would prove that this defendant is actually innocent.

"Summary of Offender's Statement:" " The defendant who was found guilty after a jury trial denies guilt in the instant offense stating that he never saw the complainant previously and that he was at work as a disc jockey at the time the incident occured." (please see defendant's presentence investigation report page three (3) dated September 28, 1983, marked as Exhibit K).

8. By the People not being able to produce or find the "lost" DNA evidence in defendant's case especially since the NYPD has only looked in a very limited number of places in over five (5) years and the prosecutor's office not once every brought their complaint to Judge Massero's attention about years of delay by the NYPD. This inaction by the District Attorney's Office was not only a brady vio-lation issue to a denial of the defendant's civil rights as well. Under the familiar Brady rule, " the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material... irrespective of the good faith of the prosecution", Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, (1963). The application of this rule to cases where evidence has been lost or destroyed, so that it is impossible to know for sure whether it would have helped the defendant or not has caused much debate. The United State Supreme Court has held that any duty of a state to preserve evidence " must be limited to evidence that might be expected to play a significant role in the sus-

pect's defense", California v.Trombetta, 467 U.S. 479, 488, 104 S. Ct. 2528 (1988).  And in Arizonia v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333 (1988) the Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process".  This is an act of prosecutorial misconduct and prosecutoral abuse and has to be looked at by this Court because there is no rational excuse for so many years of delay when the NYPD only looked for the requested DNA evidence one time.  " it is a familiar doctrine that a prosecutor serves a dual role as advocate and public officer.  He (she) is charged with the duty not only to seek convictions but also to see that justice is done.  In his (her) position as a public officer he (she) owes a duty of fair dealing to the accused and candor to the courts.'", People v. Pelchat, 62 N.Y. 2d 97, 105, 476 N.Y.S. 2d 79, (1984).

9.  The People not only have to file an affidavit with the court as to show there was a diligent and unsuccessful effort to finding the DNA evidence, but also show that said DNA evidence does not exist.  ".... the People presented detailed affidavits by detectives and the prosecutor, based on personal knowledge, setting forth their diligent but unsuccessful efforts to locate certain evidence on which forensic DNA testing was to be performed could no longer be located and thus was no longer available.", People v. Garcia, 65 A.D. 3d 932, 933, 886 N.Y.S. 2d 110 (1st Dept. 2009).  Also, it is not the responsibility of this defendant to prove that the requested DNA evidence exist or does not exist, this is the responsibility of the Bronx County District Attorney's Office.  " Pitts embraced the import of that provision by holding that "the defendant does not bear the burden of showing that the specified DNA evidence exists and is available in suitable quantities to make testing feasible.  To the contrary, it is the People... who must show what evidence exists and whether the evidence is available for testing.", People v. Pitts, 4 N.Y. 3d 303, 795 N.Y.S. 2d 151.

10.  It seems that defendant was dealt with in the manner of a kangaroo court fashion by the office of the Bronx County District Attorney's Office, the NYPD evidence management system, as defendant's attorney stood by helplessly and watched saying nothing to the court for five and a half years.  These actions by these two officer's of the court and the NYPD has violated defendant's constitutional rights and civil rights under color of law as well as due process and equal protection under all of the applicable laws.  This is a very suspicious act by the District Attorney's Office (United States v. Bagley, 473 U.S. 667, [Prosecutorial Misconduct])

6

and NYPD conspiratorical in nature as defense attorney (Ms. Hoth) did absolutely nothing, therefore, being totally ineffective in her assistance as counsel to defendant. "The right to the effective assistence of counsel is guaranteed by both the federal and state constitutions (U.S. Const., 6th Amend; N.Y. Const; Art. 1, Sec. 6). What constitutes effective assistance is not and cannot be fixed with yardstickk percision, but varies according to the unique circumstances of each representation, People v. Droz, 39 N.Y. 2d 407." Also, "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of representation reveal that the attorney provided meaningful representation, the constitutional requirement will have been met ...", People v. Baldi, 54 N.Y. 2d 137, at pages 146-147.

11.  Sgt. Charles has stated in his affidavit that the DNA requested by the defense is lost and that there is no information of its last location. What the defendant would like to know is what happened to the use of the yellow and white invoices associated when said requested DNA evidence was filed years ago by the NYPD. Because according to the NYPD they have a very indepth procedure (property guide of the NYPD offical evidence management system) down to filing DNA evidence as well as evidence in general. "... The yellow invoice was stored in an "active yellows" file. Whenever the property moved, its new location was to be printed on the yellow invoice. When the property was transported to court, the yellow invoice was to be stored temporarily in an "out-to-court yellows" file, with an "out of custody" card placed in its stead in the active yellows file. When the property was destroyed or auctioned, that fact and the date of destruction or sale were noted on the yellow invoice and the invoice itself placed in a "closed-out yellows" box. If property was missing from its storage location, the supervisor of the PCD facility was required to start a preliminary search that included (1) asking the arresting officer whether the property was ever removed to court and subsequently repacked after return, and then (2) checking with Pearson Place Warehouse, a warehouse facility in Queens, to determine if the missing property was located there.", Newton v. City of New York, 779 F. 3d 140, (2nd Cir. 2015).

12.  The NYPD's evidence management and retrival system has directly affected the offices of the District Attorneys for a number of years; so what Sgt. Charles and the NYPD did so far as taking so many years to send an affidavit to the Bronx County District Attorney's Office is nothing new. Especially when it comes down to post conviction evidence, there have been times the NYPD would not even answer District Attorneys because their "logbooks" would contain inaccurate information and

"numerous" case yellow invoices were missing.    An "expert witness" who was an "evidence specialist" who has consulted with police departments throughout the United States regarding evidence management said that the NYPD evidence management system that has existed in the past has best "sporadic at best", including chain-of-custody procedures and practices, "were weak" if not non-existent, (please see Newton v. City of New York, supra).    Therefore, the defendant is entitled to a faithful accounting of the evidence in the District Attorney Office and NYPD possession.

13.    On February 26, 2015, after reviewing Newton's case very carefully and completely for over two (2) years.  The United States Court of Appeals, Second Circuit was responsive and in total agreement with Newton that the NYPD (New York City) had an inadequate evidence management system which had denied Newton of his constitutional rights of due process, therefore, Newton had won his criminal case in the New York State and his Federal (civil) Court case.  But in this Court's (2nd Cir.) conclusion the Judges truly believed and were confident that all the mistakes made by the PCD and NYPD in the past would change for the better in the very near future and therefore be corrected.  "we are confident that the evidence management failures indentifed in this case have been or will be remedied with the half of modern technological advances and stronger recordkeeping practices." These past five and a half years (5½) this defendant has not seen or experience any change for the better within the NYPD's evidence management system.    The system still appears to be inadequate and abusive to a very great degree which has, therefore, violated a number of the defendant's constitutional rights.  Such abuse by the Bronx County District Attorney's Office and the NYPD also violates the New York State Constitution's prohibition against cruel and unusal punishments (NY Const, art I §5).  Because this defendant today still stands on his platfrom of actual innocence.

"...a defendant who establishes his or her actual innocence by clear and convincing evidence is entitled to relief.  Because a person who has not committed any crime has a liberty interest in remaining free from punishment, the conviction or incarceration of a guiltless person, which deprives that person of freedom of movement and freedom from punishment and violates elementary fairness, runs afoul of the Due Process Clause of the New York State Constitution (NY Const, art I, §6)."People v. Hamilton, 115 A.D. 3d 12 (2014).

8

14. In closing the defendant would like to say that to this defendant's actual knowledge former defense counsel Ms. Jan Hoth had been exchanging E-mails with ADA Charles - Tae Hoon Won about the affidavit from "the Sergeant with the NYPD Property Clerk's Office". The E-mails from ADA Charles - Tae Hoon Won was between December 28, 2015 - January 3, 2017, one E-mail is also attached to Exhibit F dated July 8, 2016. Now, letters with E-mails attached are dated as such and will be therefore marked as Exhibit M for the defendant, 1) December 28, 2015, 2) September 8, 2016 with an August 18, 2016 E-mail attached, 3) January 3, 2017.

Also, the CPL Sec. 440.30 (1-a)(a)(2) that Ms. Jan Hoth had filed with the Bronx County Supreme Court on defendant's behalf on October 24, 2012 entails the complete history of the defendant's unfortunate circumstance. Therefore, defendant has attached said CPL Sec. 440.30 motion by Ms. Hoth on this defendant's behalf to defendant's newly filed CPL Sec. 440.30 (1-a)(a)(2) pro se motion. Because in Ms. Hoth March 19, 2018 letter attached as Exhibit A, Ms. Hoth did not say that the Bronx County Supreme Court Clerk's Office, or the Bronx County District Attorney's Office "lost the file" (which she was talking about said CPL Sec. 440.30 motion). She said the "Court" had "lost the file". Again defendant feels that the CPL Sec. 440.30 (1-a)(a)(2) that had been filed with the court by Ms. Hoth gave an indepth history as to why the defendant has been making a request to have the DNA evidence from his 1983 case tested said request has been made by this defendant well over a decade.

WHEREFORE, defendant is proceeding Pro se, it is respectfully requested that he be afforded "liberal construction" upon the proceedings had herein and not be held to the same standards as that of a licensed and practicing attorney, and that his brief be liberally read and interpreted to raise the strongest arguments they suggest pursuant to the authority of Burgos v. Hopkins, 14 F. 3d 787, 790 (2nd Cir. 1994) (according, Elliot v. Bronson, 872 F.2d 20, 21-22 [2nd Cir. 1989]); see also, Haines v. Kerner, 404 U.S. 519 (1972); Ali v. Goord, 267 A.D. 2d 520 (3rd Dept. 1999). Additionally, defendant further requests this Honorable Court's indulgence in any errors of form or procedure committed in the perfection of the instant pro se motion (CPL 440.30 (1-a)(a)(2)) pursuant to CPLR Sections. 2001, 2002, 2004, 2005 and 2101(f).

Dated: July 23, 2018

9

_Mr. William Allen_
Mr. William Allen, #03A4303
Defendant, Pro-se
Sullivan Corr. Facility
P.O. Box 116, Loc. AN/235
Fallsburg, NY 12733-0116

Sworn to before me this

_25_ day of July, 2018

_____
NOTARY PUBLIC

```
DREW E. HARMAN
NOTARY PUBLIC - STATE OF NEW YORK
No. 01HA6370250
QUALIFIED IN SULLIVAN COUNTY
COMMISSION EXPIRES 1/29/2022
```

10

Exhibit F

# CENTER FOR APPELLATE LITIGATION

120 Wall Street, 28th Floor, New York, NY 10005  Tel. (212) 577-2523  Fax (212) 577-2535

May 3, 2018

Mr. William Allen
03-A-4303
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, New York 12733-0116

Dear Mr. Allen:

I hope this letter finds you well. In response to your letter dated April 12, 2018, I went back through my file and discovered that I had given you some misinformation. Your motion was assigned to Hon. Dominic Massero who has not retired from the bench. I am not sure who told me that, but it is not true. Judge Massero is still an active judge. However, both the judge and the court have indeed lost your file.

I am sorry that I am unable to help you further. I wish you the best of luck with your motion.

Sincerely,

Jan Hoth
Appellate Counsel

EX. "E"

Exhibit G

# CENTER FOR APPELLATE LITIGATION

120 Wall Street, 28ᵗʰ Floor, New York, NY 10005 Tel. (212) 577-2523 Fax (212) 577-2535

March 19, 2018

Mr. William Allen
03-A-4303
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, New York 12733-0116

Dear Mr. Allen:

I hope that this letter finds you well. Its been quite some time since we corresponded. Unfortunately, I have some bad news. The district attorney finally got an affidavit from the police department attesting to the lose of the evidence in your case. A copy is enclosed.

As you may remember, five years ago the district attorney was able to get our motion off the court's calendar. The reason for that was simple—they did not want to have to go to court every month and explain why they did not have a affidavit from the police if the evidence was lost. Now that they have the affidavit, they attempted to answer our motion. However, the judge who was originally assigned to hear the motion has retired and the court lost the file.

Under the circumstances, in order to get the issue heard, I would need to either re-file the old motion or file a new one. However, given the nature of the affidavit, there simply is no reason to re-file the motion. The affidavit lists in extensive detail all of the places that the police looked for the evidence. Worse, it says that they looked back in 2013, when we first filed the motion. While it does not explain what took them five years to sign an affidavit, that is not the point.

I am sorry, but there is really nothing left for me to do. I wish you the best of luck in all of your own actions.

Sincerely,

Jan Hoth
Appellate Counsel

enclosure

EX. "A"

Exhibit H

SUPREME COURT OF THE STATE OF NEW YORK
BRONX COUNTY

--------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

                Respondent,

     - against -

WILLIAM ALLEN,

              Defendant.

--------------------------------------------------------------X

                                       **AFFIDAVIT**
                                       Indictment No. 623/83

Sgt. Ralph Charles, being duly sworn, hereby deposes, under the penalty of perjury the following:

1. That I have been employed by the New York City Police Department (hereinafter "NYPD") for over fifteen years. I am presently a Sergeant in the Bronx Borough Property Clerk's Office, located at 215 E. 161st Street, Bronx, New York 10451. I have worked at this command for ten years.

2. As a Sergeant in the Bronx Borough Property Clerk's Office, my duties include safeguarding and cataloguing evidence kits and other items in NYPD possession, and having them ready for court presentations or for release to rightful owners. I am also responsible for searching for and retrieving items in NYPD possession.

3. On or about May 28, 2013, I conducted a search for property listed under Invoice # B302254 as a "sexual evidence kit" and one white pantie (hereinafter "Property Invoice # B302254").

4. On or about May 28, 2013, I searched the Bronx Borough Property Clerk's Office for Property Invoice # B302254 with negative results.

5. On or about May 28, 2013, I conducted a search for the Biological Evidence

Containers but they could not be located.

6.     On or about May 28, 2013, I conducted a search for the logs maintained by Pearson Place Warehouse, for the above-referenced invoice number but they could not be located.

7.     On or about May 28, 2013, I conducted a search for the NYPD "Out to Lab" files for the above-referenced invoice number but they could not be located.

8.     On or about May 28, 2013, I conducted a search for the NYPD "Out to Court" files for the above-referenced invoice number but they could not be located.

9.     On or about May 28, 2013, I conducted a search for the NYPD "Closed Out" files for the above-referenced invoice number but they could not be located.

10.    On or about May 28, 2013, I called the OCME Office and asked to have their logs searched for the above-referenced invoice number with negative results.

11.    On or about May 28, 2013, I examined the Bronx Property Clerk Borough Office Cross Reference Log, and learned that a storage number had been assigned to it.

12.    Based upon the above-mentioned information, I was unable to locate the property associated with Invoice # B302254 nor any NYPD paperwork indicating where the property could be located.

Sgt. Ralph Charles
Bronx Borough Property Clerk's Office

Sworn to before me this 12th day of January 2018

Notary Public

Julie Cleary
Notary Public, State of New York
Qualified in Westchester County
Registration No. 01CL6054864
Commission Expires 11/9/18

2

Exhibit I

# CENTER FOR APPELLATE LITIGATION

74 Trinity Place, 11th Floor, New York, NY 10006  Tel. (212) 577-2523  Fax (212) 577-2535

March 22, 2013

Mr. William Allen
03-A-4303
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, New York 12733-0116

Dear Mr. Allen:

I just want to update you on the status of your motion for DNA testing.  The police still have not located the evidence in your case, but they have not yet declared it hopelessly lost.  Thus, I consented to the prosecutor's request to adjourn their time to respond until May 14, 2013.  I really cannot object since we want the evidence found and tested.

Sincerely,

Jan Hoth
Appellate Counsel

EX. "B"

Exhibit J

*appeals*

SUPREME COURT OF THE STATE OF NEW YORK
BRONX COUNTY: CRIMINAL TERM: PART A

**D.A. COPY**

-----------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,    :

                                        :    NOTICE OF MOTION
            - against -                 :
                                        :    Ind. No. 623/83

WILLIAM ALLEN,                          :    Bronx County

                Defendant-Movant.       :

-----------------------------------------------------------X

　　　　　PLEASE TAKE NOTICE that upon the annexed affirmation of Jan Hoth and

the exhibits thereto; the annexed memorandum of law; and all the prior proceedings

had herein; the undersigned will move this Court, at the Courthouse, 851 Grand

Concourse, Part A, Bronx, New York, on the 7th day of November, 2012, at 9:30 in

the morning, or as soon thereafter as counsel can be heard, for an order, pursuant

to C.P.L. § 440.30(1-a)(a)(2), directing that DNA testing be performed on evidence

previously obtained in defendant's case.

Dated:　New York, New York
　　　　　October 24, 2012

　　　　　　　　　　　　　ROBERT S. DEAN
　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　Center for Appellate Litigation
　　　　　　　　　　　　　74 Trinity Pace – 11th Floor
　　　　　　　　　　　　　New York, New York 10006
　　　　　　　　　　　　　(212) 577-2523

　　　　　　　　　　　　　JAN HOTH
　　　　　　　　　　　　　Of Counsel
　　　　　　　　　　　　　(212) 577-2523 ext. 532

2012 OCT 24  PM 4:40
BRONX COUNTY
DISTRICT ATTORNEY
RECEIVED

TO:

CLERK'S OFFICE
Supreme Court
Bronx County
851 Grand Concourse
Bronx, New York 10451

HON. ROBERT T. JOHNSON
District Attorney, Bronx County
215 East 161st Street
Bronx, New York 10451

MR. WILLIAM ALLEN
03-A-4303
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, New York 12733-0116

SUPREME COURT OF THE STATE OF NEW YORK
BRONX COUNTY: CRIMINAL TERM: PART A
-----------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,    :

                                               :    AFFIRMATION

           - against -    :    Ind. No. 623/83

WILLIAM ALLEN,    :    Bronx County

                        Defendant-Movant.    :
-----------------------------------------------------------------X

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NEW YORK   )

      JAN HOTH, an attorney duly admitted to practice before the courts of this State, hereby affirms under penalty of perjury that the following statements are true, except those made upon information and belief, which she believes to be true:

      1.    I am associated with the Center for Appellate Litigation, which was assigned by Order of the Appellate Division, First Department on September 18, 2003, to represent Mr. Allen on his appeal from a judgment of the Supreme Court, New York County, rendered July 21, 2003, convicting him, after a jury trial, of rape in the first degree, two counts of sodomy in the first degree, and sexual abuse in the first degree under New York County indictment number 1826/00 (see Ex. A: Order of Assignment). Mr. Allen was sentenced, as a predicate violent felony offender, to an aggregate term of 82 years: consecutive terms of 25 years on each of the rape and sodomy counts and seven years on the sex abuse count.

1

2.    The predicate offense for that conviction was Mr. Allen's 1989 Bronx County convictions, following a guilty plea, of rape in the first degree and robbery in the second degree pursuant to Bronx County indictment number 623/83. Mr. Allen and was sentenced to an indeterminate term of 6 to 18 year on this conviction (see Ex. B: 4/3/89 Plea Minutes; Ex. C: 5/8/89 Sentencing Minutes).

3.    I make this affirmation in support of Mr. Allen's motion, pursuant to C.P.L. § 440.30(1-a)(a)(2), for an order directing that DNA testing be performed on evidence that was obtained in his case. The DNA results will establish a "substantial probability" that Mr. Allen is actually innocent of this crime.

The 1989 Bronx County Conviction

4.    Pursuant to Bronx County indictment number 623/83, Mr. Allen was charged with, inter alia, rape in the first degree, sodomy in the first degree, and robbery in the first degree (See generally Ex. D: People v. Allen, 140 A.D.2d 229 (1st Dep't 1988)).

5.    Mr. Allen proceeded to trial. At trial, the People presented a one-witness identification case, relying exclusively on the testimony of the complainant (Ex. D: People v. Allen, 140 A.D.2d at 232 ("[T]he only proof of the defendant's guilt was the complainant's identification.")). Apparently, the People did not admit any forensic evidence at trial. Mr. Allen presented a mistaken identification defense and an alibi.

6.    According to the First Department, the evidence at trial established:

2

[T]he complainant was raped and sodomized on the evening of January 5, 1983, in her apartment building in the Bronx. The complainant, who returned home at about 10:00 p.m., noticed a man wearing a blue hood and brown overjacket standing in the lobby as she entered. She summoned the elevator and rang for the ninth floor where she lived, but the elevator stopped on the second floor. When the doors opened she saw the man in the blue hood standing with a gun pointed at her face. He told her to get off the elevator and she complied. He then said "everybody is going to pay, everybody is going to suffer." The complainant, who is four feet, eleven inches tall, looked up at the man's face as he spoke, wondering what he was referring to.

The man forced the complainant, at gunpoint, to walk down to the first floor landing where he repeatedly raped and sodomized her. During the attack, the complainant heard someone descending the stairs. Her attacker threatened that if she screamed he would kill her and whoever was coming downstairs. No one, however, descended to the first floor landing. Before fleeing, the man took the complainant's watch and ordered her to remove her pants. After she had done so, he ran out the front door and the complainant ran upstairs to her apartment.

Later that evening, the complainant described her attacker to police officers as a tall black male, wearing a blue hood, brown overjacket, blue jeans, and white sneakers. When asked to specify her assailant's height, she pointed to her uncle who was six feet tall. A short while later, the police officers brought a dark skinned hispanic suspect back to the complainant. However, she recognized him as a man from the neighborhood and stated he was not her attacker. The next day, in an interview with a detective from the Bronx Sex Crimes Unit, the complainant again gave essentially the same description of her attacker, but she added that the man had a chipped tooth.

On January 9, the complainant went to the photo unit at

3

the 48th Precinct where, after reviewing approximately 600 photographs, she selected a picture of the defendant. When asked how certain she was of this identification on the scale of one to ten the complainant answered "nine and a half.'" On January 14, she again selected a photograph of the defendant and said that this time she was one hundred percent certain of her identification. Following the defendant's arrest, the complainant viewed a line-up of six individuals and selected him as the man who had raped her.

The complainant testified that she observed her assailant's face in the lobby, where the lighting was good, and on the second floor, where it was even brighter. She clearly saw his face about seven times in all during the attack and she had noted that one of his upper right incisors had "a little crack on the bottom part of the tooth, just a little chip. You could hardly notice it though." She identified the defendant as her assailant.

The defense called a tavern owner who testified that the defendant, who frequently helped him by doing odd jobs, was at the tavern from 7:00 until 11:00 on the evening in question rehearsing for a show.

(Ex. D; People v. Allen, 140 A.D.2d at 230-31).

7.     In addition to the alibi evidence, Mr. Allen asked to exhibit his teeth to

the jury and offered to introduce his dental records from when he was admitted to

the Marine Corps in 1980 (Ex. D: People v. Allen, 140 A.D.2d at 231). Mr. Allen also

intended to call an expert witness to testify that Mr. Allen's mouth had not undergone

any alterations from that time to the time of the trial (id.). The trial court ruled that

if Mr. Allen presented his teeth to the jury he would be subject to cross-examination

as to the condition of his mouth on January 5, 1983, and anything else that would

4

relate to his credibility (id.).  Mr. Allen did not exhibit his teeth to the jury.

8.      The jury convicted Mr. Allen of rape in the first degree, sodomy in the first degree, robbery in the first degree; criminal use of a firearm in the first degree, and criminal possession of a weapon in the fourth degree (Ex. D: People v. Allen, 140 A.D.2d at 229-30).  He was sentenced to a prison term of 8½ to 25 years.

9.      Mr. Allen appealed his conviction to the Appellate Division, First Department.  In a unanimous ruling issued nearly five years after his trial, that court reversed his convictions (Ex. D: People v. Allen, 140 A.D.2d at 229).  The First Department found that the trial court had committed reversible error when it ruled that Mr. Allen would have been subject to cross-examination if he exhibited his teeth to the jury (Ex. D: id. at 231).  The court held:

> The condition of the defendant's tooth on the date of the rape was a critical piece of evidence bearing on the identification of the defendant as the rapist, inasmuch as the chipped tooth was an unusual, distinguishing feature observed by the complainant.  The Marine Corps dental records made prior to the incident together with expert testimony that the defendant's upper right tooth had not been altered since those records were made, sufficed to establish the relevance of the real evidence which the defendant proposed to show the jury . . . . The display of the accused's physical characteristics has long been held not to implicate the Fifth Amendment privilege against self-incrimination because such evidence is non-testimonial in nature . . . . Thus, the trial court would have unnecessarily required the defendant to take the stand and undergo cross-examination in order to present to the jury the best evidence, which was non-testimonial, in support of his defense of mistaken identity . . . . Given that the only proof of the defendant's guilt was the complainant's

identification, this error cannot be deemed harmless.

(Ex. D: id. at 231-32 (citations omitted)).

10.    After the reversal, the District Attorney's Office submitted evidence that had been obtained in the case to Lifecodes, a scientific laboratory, for possible DNA testing.  On October 25, 1988, Lifecodes sent a letter to the Bronx District Attorney's Office informing them of the results.   According to Lifecodes, Detective Stephanie Walker had provided the lab with four evidentiary items:

(i)     1 pair white underpants with strawberries

(ii)    1 seminal fluid reag. Packet

(iii)   1 plastic jar with saliva

(iv)    1 EDTA blood tube; 1 envelope with pubic hair combings, 1 pubic hair std. vaginal smear slides

(Ex. E: 10/25/88 Letter from Lifecodes Re: Lifecodes Case #: FI14289 at 1). Lifecodes reported that it had tested the evidence, but found that no DNA comparisons could be made since "an insufficient amount of high molecular weight human DNA was isolated for DNA-Print analysis" from the underpants and the seminal fluid reag. Packet (id. at 2). Lifecodes indicated that it did not test the plastic jar with saliva (id.). Lifecodes repackaged the evidence and sent it back to the District Attorney (id.). Lifecodes added, "[t]he DNA isolated in this case is retained on a nylon membrane(s) at Lifecodes and can be made available for additional analysis" (id.) (emphasis added).

6

11.    On April 3, 1989, Mr. Allen agreed to plead guilty to first-degree rape and first-degree robbery in exchange for a shorter sentence, 6 to 18 years, than the one originally imposed, and that made him automatically eligible for parole (Ex. B: 4/3/89 Plea Minutes at 2-3). The prosecutor stated that they were willing to go to trial; however, they had spoken at length with the complainant a retrial and she had consented to the plea agreement (id. at 3-4). The People felt "given all of the time and what the complainant has gone through . . . the sentence the Court is going to impose the People are not going to stand in the way of the Court at this time" (id. at 4).

12.    During the plea colloquy, the court asked Mr. Allen whether he was "taking this plea because you believe it is the right thing to do under the circumstance [sic], is that correct?" Mr. Allen confirmed that he was (Ex. B: 4/3/89 Plea Minutes at 6). Mr. Allen later admitted that the People's allegations as to what happened were the truth and that he did commit the crime (id. at 8). The court accepted the plea, and Mr. Allen pleaded guilty to rape in the first degree and robbery in the first degree (id. at 8-9).

13.    Sentencing occurred on May 8, 1989 (see Ex. C: 5/8/89 Sentencing Minutes). The prosecutor pointed out to the court that, in his interview with probation, Mr. Allen had stated that he was innocent of the crime (id. at 3-4). In response, the court asked Mr. Allen, "You did, in fact, plead guilty because you were guilty, is that correct, Mr. Allen?" Mr. Allen answered, "Yes, your Honor" (id. at 4).

7

The court sentenced Mr. Allen to the promised term of 6 to 18 years (id. at 5-6).

### Post-judgment Proceedings

14.    On May 3, 2006, Jonathan Kirshbaum, then an attorney with this office, filed a motion on behalf of Mr. Allen, pursuant to C.P.L. §§ 440.10(1)(h) and 440.30(1-a), to vacate his conviction and requested testing of the DNA evidence obtained in Mr. Allen's case (Ex. F: Motion without exhibits).

15.    The People opposed the request arguing that the language of C.P.L. § 440.30(1-a) did not apply to defendants who had pleaded guilty.  The People asserted that the statute explicitly required a conviction following a trial (Ex. G: People's Affirmation in Opposition).

16.    The People further stated that they had engaged in efforts to locate the DNA material sought by Mr. Allen, but were unable to confirm either its existence, location, or whether it had been destroyed.  The People also proclaimed that ADA Rachel Singer was still awaiting a response from potential locations of the DNA evidence and that the People "intend to continue their efforts to determine whether or not any DNA evidence still exists on this case" (Ex. G).  Besides the prosecutor's affirmation, the People provided no documentation or affidavits detailing the steps that had been taken to try and find the forensic evidence.

17.    Since the People's affirmation was filed almost six years ago, they have not provided any information regarding any further efforts undertaken to locate the DNA evidence or indicated whether the DNA evidence has been found.

18.    In a Reply Affirmation dated December 2006, counsel argued that the language of C.P.L. § 440.30(1-a) was not as restrictive as advocated by the People and that, because Mr. Allen had pleaded guilty only after his original conviction following a jury trial had been vacated by the First Department, Mr. Allen's case was a hybrid that was covered under the statute (see Ex H:  Defense Reply).

19.    In a written decision dated December 20, 2006, the Supreme Court, Bronx County (Seewald, J.), denied the motion.  Relying on People v. Byrdsong, 33 A.D.3d 175 (2d Dep't 2006), the court determined that section 440.30(1-a) did not apply to Mr. Allen because he had pleaded guilty (Ex. I: 12/20/2006 Decision and Order).

20.    On January 29, 2008, the Appellate Division, First Department affirmed, concluding that section 440.30 (1-a) "does not permit persons who pleaded guilty to seek DNA testing of forensic evidence."  People v. Allen, 47 A.D.3d 543 (1st Dep't 2008).

21.    The Court of Appeals denied leave to appeal on April 2, 2008.  See People v. Allen, 10 N.Y.3d 838 (2008).

The 2000 New York County Case

22.    In December 2003, following a jury trial, Mr. Allen was convicted of rape, sodomy, and sexual abuse in the first degree.

23.    At sentencing on July 21, 2003, the People submitted a violent felony predicate statement identifying Mr. Allen's 1989 rape conviction as a prior violent

felony conviction (see Ex. J: Predicate Violent Felony Statement).  Based on that statement, the court adjudicated Mr. Allen a violent predicate felon (see Ex. K: 7/21/03 Sentencing Minutes at 7).  Mr. Allen was sentenced to an aggregate term of 82 years (id. at 20).  In imposing sentence, the court relied, in part, on Mr. Allen's prior conviction, stating "[y]ou are a prior rapist and sexual predator by your own admissions to a plea of guilty" (id. at 19).[1]

Amendment to C.P.L. § 440.30

24.    The New York State Legislature recently amended C.P.L. § 440.30(1-a), effective October 1, 2012, to allow defendants who, like Mr. Allen, were convicted following a plea of guilty, to obtain post-conviction DNA testing.  See C.P.L. § 440.30(1-a).

25.    Additionally, the New York State legislature amended C.P.L. § 440.10(g-1) to reflect the changes to 440.30(1-a).  This new subsection permits a court to vacate a judgment, on motion of the defendant, on the ground that "[f]orensic DNA testing of evidence performed since the entry of judgment, (1) in the case of a defendant convicted after a guilty plea, the court has determined that the defendant has demonstrated a substantial probability that the defendant was actually innocent of the offense of which he or she was convicted, . . . ." C.P.L. § 440.10(g-1).

---

[1]    On May 17, 2006, Mr. Allen was resentenced to the same aggregate term of 82 years' imprisonment.

10

26. As discussed more fully in the memorandum of law attached hereto, Mr. Allen meets the standards under section 440.30(1-a) and thus, is entitled to DNA testing of the forensic evidence that was collected in his case. DNA testing of the forensic evidence that was obtained in this case will establish a "substantial probability" that Mr. Allen is actually innocent and thus, he is entitled, under C.P.L. § 440.10(g-1), to vacatur of his conviction.

WHEREFORE, it is respectfully requested that the court issue an order: (a) granting DNA testing on the evidence obtained in this case.

Dated: New York, New York
October 24, 2012

_____
JAN HOTH

SUPREME COURT OF THE STATE OF NEW YORK
BRONX COUNTY: CRIMINAL TERM: PART A
-----------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,                 :

                                                      : MEMORANDUM OF LAW

               - against -

                                              : Ind. No. 623/83

WILLIAM ALLEN,                                       : Bronx County

                     Defendant-Movant.              :
-----------------------------------------------------------------------X

## ARGUMENT

THE COURT SHOULD ORDER DNA TESTING OF THE FORENSIC EVIDENCE THAT WAS COLLECTED IN THIS CASE BECAUSE THERE IS A "SUBSTANTIAL PROBABILITY" THAT THE RESULTS OF THAT TESTING WOULD ESTABLISH MR. ALLEN'S ACTUAL INNOCENCE. C.P.L. §§ 440.30(1-a).

This case presents the classic opportunity where the rapid advances in forensic science can work to ensure that justice is done. In 1983, Mr. Allen was accused of rape and other crimes after a total stranger picked his photograph out of an array and named him as her attacker. However, at the time of her initial identification of Mr. Allen, the complainant was less than 100% sure that he was the man who had raped her. A subsequent viewing of Mr. Allen's photograph convinced her that she had identified the correct man. This suspect identification was the only evidence presented by the People at Mr. Allen's trial. Although forensic evidence had been collected, it had never been tested.

12

In his defense, Mr. Allen presented evidence that he was somewhere else at the time of the crime. He also attempted to demonstrate to the jury that he did not have, and had never had, a chipped front tooth — a prominent feature of the complainant's description. The court's ruling that Mr. Allen would be subject to a full range of cross-examination if he displayed his teeth prevented Mr. Allen from displaying his teeth. That trial court's ruling was reversed on appeal in 1988, five years after Mr. Allen's conviction. Faced with the possibility of a second trial, the People finally sent the forensic evidence for DNA testing, but the laboratory concluded that there was an insufficient amount of DNA present for testing. Mr. Allen subsequently pleaded guilty and received a reduced sentence that made him immediately eligible for parole. Mr. Allen's original request for DNA testing was denied because C.P.L. § 440.30 limited that relief to defendants who had been found guilty after a trial.

Mr. Allen is now entitled to DNA testing. The New York Legislature recently amended section 440.30 to grant defendants who had pleaded guilty to sexual offenses a statutory right to obtain post-conviction DNA testing of evidence. Mr. Allen meets all of the requirements of the new subsections. Relevant forensic evidence that can be tested was collected in this case. And, while it was determined at that time that there was insufficient DNA material for testing, DNA testing technology has significantly advanced since 1988. Current tests are far more sensitive, requiring far less DNA than the prevailing tests that were used in 1988.

In addition, single hairs can now be tested for DNA, a procedure that was unheard of in 1988. As discussed more fully below, if these tests had been conducted prior to his guilty plea, the test results would have proven, beyond any doubt and at least "by a substantial probability," that Mr. Allen is actually innocent of the crime. Because Mr. Allen is indigent, the testing should be conducted at the State's expense. Washpon v. New York State District Attorney, Kings Co., 164 Misc. 2d 991, 994 (Sup. Ct., Kings Cty. 1995).

A.    The Statutory Provisions

Prior to October 1, 2012, post-conviction testing of DNA evidence, pursuant to § 440.30(1-a), was not available to a defendant who had pleaded guilty. See People v. Allen, 47 A.D.3d 543 (1st Dep't 2008); People v. Byrdsong, 33 A.D.3d 175 (2d Dep't 2006). This is precisely what this Court and the First Department held with respect to Mr. Allen's prior request for such testing.[2]

Under the recently amended section 440.30(1-a) of the criminal procedure law, a defendant, like Mr. Allen, who suffered a conviction following a plea of guilty, may now move for post-conviction forensic DNA testing of specified evidence. See

---

[2]    Although Mr. Allen has filed a prior C.P.L. § 440.10 motion requesting DNA testing, the present motion should not be denied under C.P.L. § 440.10(3)(c). A denial under that subsection is not mandatory, but discretionary. It would be an abuse of discretion to deny the present motion based on the prior motion because Mr. Allen now has a statutory right to raise an issue that he was previously barred from raising. Moreover, as discussed in more detail below, a defendant can obtain tolling of the statute of limitations provided that he has diligently pursued his rights. It would be illogical for a court to deny a motion filed under the newly amended section 440.10 on the ground that it was raised in a previous motion where the changes to the statute specifically allow a defendant to rely on that prior motion to obtain tolling.

2012 Sess. Law News of N.Y. Ch. 55 (S. 6255-D). Newly created subsection (1-a)(2), effective October 1, 2012, states, in relevant part that a "court shall grant such a motion upon its determination that evidence containing DNA was secured in connection with the investigation or prosecution of the defendant, and if a DNA test had been conducted on such evidence and the results had been known to the parties prior to the entry of the defendant's plea and judgment thereon, there exists a substantial probability that the evidence would have established the defendant's actual innocence of the offense or offenses that are the subject of the defendant's motion."

A court may, however, deny a defendant's motion for DNA testing under the new provisions of section 440.30(1-a)(2)(i), where the defendant had the opportunity to request such testing prior to entering his guilty plea and "unjustifiably" failed to do so.

A court may also deny a defendant's motion for DNA testing under section 440.30(1-a)(2)(ii), if the defendant has made his motion more than five years after the entry of judgment of conviction. See C.P.L. § 440.30(1-a)(2)(ii). The limitation period, however, may be tolled if a defendant can show that an exception applies in his case:

> (A) that he or she has been pursuing his or her rights diligently and that some extraordinary circumstance prevented the timely filing of the motion for forensic DNA testing; (B) that the facts upon which the motion is predicated were unknown to the defendant or his or her

15

attorney and could not have been ascertained by the exercise of due diligence prior to the expiration of this statute of limitations; or (C) considering all circumstances of the case including but not limited to evidence of the defendant's guilt, the impact of granting or denying such motion upon public confidence in the criminal justice system, or upon the safety or welfare of the community, and the defendant's diligence in seeking to obtain the requested property or related relief, the interests of justice would be served by tolling such limitation period.

Id.

B.     Mr. Allen Meets All of the Requirements of the New Subsections and Thus, Is Entitled to DNA Testing

    1.     Specific Forensic Evidence Exists in This Case That Can Be Tested

The Lifecodes report establishes that forensic evidence -- a pair of women's underwear, a seminal fluid "reag. packet," a plastic jar with saliva, 1 envelope with pubic hair combings, "1 pubic hair std. vaginal smear slides," and nylon membranes with the isolated DNA -- was obtained in this case that can be tested. See Ex. E.

That Lifecodes concluded in 1988 that insufficient DNA was present to allow for testing is, of no moment.[3]  Since 1988, "a revolution in science and law-enforcement has taken place."  People v. Sterling, 6 Misc. 3d 712, 719 (County Ct., Monroe Cty. 2004)(quoting defendant's motion).  Technological and scientific progress in DNA testing during the 1990's now makes it possible to obtain results in cases where testing had previously been inconclusive or unavailable -- even where the samples are extremely small and the only thing to be tested is a single

_____

[3]     Notably, the People did not advance this claim in response to the prior § 440.10 motion.

16

hair.

Undoubtably, at the time of the original testing in 1988, Restriction Fragment Length Polymorphism ("RFLP") Testing was used to determine whether there was a match. See People v. Wesley, 83 N.Y.2d 417 (1994) (determining that RFLP DNA testing performed at Lifecodes was admissible at trial). However, RFLP testing requires that a sample be in highly quality form and be quite large, containing 100,000 or more cells. See National Institute of Justice, Postconviction DNA Testing: Recommendations for Handling Requests, at 26-27 (Sept. 1999) (hereinafter "Postconviction DNA Testing") (available at http://www.ncjrs.gov/pdffiles1/nij/177626.pdf last visited October 16, 2012); Phillip Jones, Forensic Magazine, DNA Forensics: From RFLP to PCR-STR and Beyond (Sept. 2004) (hereinafter "Jones, DNA Forensics") (available at http://www.forensicmag.com/articles.asp?pid=17 last visited October 16, 2012). Beginning in the early to mid 1990's, many labs began to use PCR based testing. This type of testing has now been widely accepted in court. Postconviction DNA Testing at 27. PCR testing is preferred since it can be done on samples that are quite small, containing only 50 to 100 cells, meaning that it requires only a thousandth of what was needed under the RLFP test. Id.; Jones, DNA Forensics. Furthermore, the PCR test can also be used on lower quality samples. Postconviction DNA Testing at 27.

Even more recently, the PCR based STR tests have become more common

17

as they allow a discriminating result from an even smaller sample, such as material left on a cigarette butt or on chewing gum. Jones, DNA Forensics. Notably, the FBI now exclusively uses the PCR-STR tests on forensic evidence. Id.; see also People v. Sterling, 6 Misc. 3d at 730 (mentioning defendant's assertion that STR DNA testing is the standard DNA test, used by the federal government and all fifty states to operate the national and local databanks).

Meanwhile, the groundbreaking mtDNA testing has recently been developed that allows DNA testing of biological items that had never been considered candidates for DNA testing. Postconviction DNA Testing at 28. This includes hair shafts, which clearly may be present in this case. The FBI has begun using this type of testing on forensic evidence and it has been accepted as a reliable form of testing in New York Courts. See People v. Klinger, 185 Misc. 2d 574 (County Ct., Nassau Cty. 2000).

In addition, the age of the sample does not matter. Any probative biological sample that has been stored dry or frozen, regardless of age, may be considered for DNA analysis. Postconviction DNA Testing at 23; People v. Sterling, 6 Misc. 3d at 723. DNA samples that are over 20 years old have been successfully tested using the PCR method. Postconviction DNA Testing at 23.

Thus, "it is evident that profound and far-reaching advances in this area of science have occurred relatively quickly." People v. Sterling, 6 Misc. 3d at 721. These new DNA tests are far more sensitive, requiring much smaller samples.

18

These tests simply were not present at the time that the original evidence was tested in this case. For these reasons, the National Institute of Justice recommends:

> The changes in expertise and technology available for forensic DNA testing may require the reexamination of previously inconclusive test results and/or retesting of the samples. . . . samples that yielded no or uninterpretable results with RFLP testing may well yield interpretable results with nuclear PCR testing. Similarly, samples that were unsuitable for nuclear PCR testing may yield results with mitochondrial DNA testing.
>
> In older cases appropriate evidentiary samples or standards may not have been available or recognized as relevant and/or were unsuitable for testing with DNA tests available at that time. Reevaluation of collected evidence samples may lead to the identification of other relevant biological samples that had been previously undetected, or previously tested items that may give conclusive results with current techniques. Additional testing with newer, more sensitive, and more discriminating tests (e.g. short tandem repeats (STRs), Y chromosome) may help resolve previously inconclusive test results where the evidence sample and the known standards from the victim and suspect all gave the same test results, or evidentiary samples previously yielded no DNA foreign to the victim (e.g. vaginal swabs, breast swab, fingernail clippings) . . . .

Postconviction DNA Testing at 25. Accordingly, the forensic evidence collected in this case can most likely be tested.

Although the tremendous changes in DNA testing strongly counsel that the evidence collected in this case should be tested, it should also be noted that a judge of this Court found that, during the same time period as the original testing in this case, Lifecodes' testing procedures were lacking. See People v. Castro, 144 Misc.

19

2d 956 (Sup. Ct., Bronx Cty. 1989). Under the circumstances, the results from 1988 should not be used as proof that testing is not feasible here; a new look at the available evidence in this case is warranted.

Because forensic evidence that can be tested was collected in this case, Mr. Allen requests testing on each of the items of evidence listed in the Lifecodes report. Namely, Mr. Allen requests that Polymerase Chain Reaction ("PCR") based Short Tandem Repeat ("STR") Testing should be performed on (1) the DNA material that exists on the "nylon membranes" that Lifecodes retained, (2) any biological fluids present on the underwear, (3) any biological fluids present in the seminal fluid "reag. packet," (4) any biological fluids present in the saliva jar, (5) any biological fluids present on the vaginal smear slides, and (6) any biological fluids in the remainder of the rape kit. If the traditional STR testing is unsuccessful on any of these items, other types of DNA testing, such as PCR-Y chromosome STR (Y-STR) test, should be employed. See People v. Keene, 10 Misc. 3d 881, 887 (Sup. Ct., Queens Cty. 2005). Further, Mr. Allen requests that Mitochondrial DNA ("mtDNA") testing be performed on any hair shafts that are contained in the pubic hair combings or the remainder of the rape kit.

Furthermore, because there is some evidence that can be tested in this case, the defense asks that the People review the entirety of the available evidence to determine whether there is other evidence that could be tested. From the details present in the Lifecodes report, it is clear that a rape kit was performed in this case.

20

The items that were listed in the Lifecodes report may not include the entirety of the rape kit, as they often times include such items as swabs of several locations, fingernail scrapings and fingernail clippings. In addition, there could be other clothing in the possession of the People or the police that could potentially have biological samples that should be tested. Because the People had possession of the victim's underwear (which presumably was the underwear worn on the date of the incident), it is logical to conclude that the victim's remaining clothing is also in the State's possession.

Accordingly, the defense requests that the People examine any evidence related to this case that is in the possession of the District Attorney's Office, the police department evidence or property rooms, Lifecodes or any other scientific laboratory, the hospital or doctor's office where the victim was examined at the time of the incident, the Office of the Chief Medical Examiner, or any other possible location where evidence from this case could still be held to determine whether any of the following exists that can be subject to DNA testing: clothing, shakings from clothing, gauze pads, slides, swabs, tissue blocks or cultures, fingernail clippings, saliva, secretions, or any other fluid or item that could be susceptible to DNA testing.

The People have the burden of determining the location and existence of the forensic DNA evidence requested by Mr. Allen. In <u>People v. Pitts</u>, the Court of Appeals examined C.P.L. § 440.10(1-a) and concluded that its requirements "reflect the vital importance and potential exonerating power of DNA testing." 4 N.Y.3d 303,

21

310 (2005). The Court of Appeals determined "the defendant does not bear the burden of showing the specified evidence exists and is available . . . to make testing feasible." Id. at 311. Instead, the burden falls on the People, "as the gatekeeper of the evidence," to make that determination with "sufficient specificity whether the evidence existed and could be tested." Id. at 311, 312.

The Court of Appeals also concluded that, in denying a defendant's motion, a court may not rely "merely on the People's conclusory assertion that the evidence in question no longer exists." Id. ("The mere assertion that the evidence no longer exists based on a phone call to a police Property Clerk's office is insufficient as a matter of law under CPL 440.30(1-a)"); see also People v. West, 41 A.D.3d 884, 885 (3d Dep't 2007)(finding State Trooper's affirmation that evidence destroyed conclusory because "it does not claim to be based upon personal knowledge of the evidence's destruction, does not state the source of the Trooper's knowledge or reveal when the evidence was destroyed."). What is required is a hearing, or steps by the court, "to obtain from the People reliable information as to whether or not the evidence exists and the source of such information. Adequate information from the People might include, for example, an affidavit from an individual with direct knowledge of the status of the evidence or an official record indicating its existence or nonexistence." Pitts, 4 N.Y.3d at 312; see also West, 41 A.D.3d at 885 ("Also lacking is any reference to police records of the evidence's storage or disposal.").

The Court of Appeals in Pitts further stressed that courts have the power to

22

supervise the People's search for DNA evidence and can "direct prosecutors to inform defendants of any information in the prosecutor's possession regarding the current location of the evidence to be tested, whether the evidence still exists, and the last-known physical location of the evidence." 4 N.Y.3d at 310. The requirement that courts oversee that proper procedures used by the People to locate critical evidence "reflect the vital importance and potential exonerating power of DNA testing." Id.

Here, this Court should direct the People to provide detailed documents including personal affidavits from those involved in the search and the people who were contacted, including details as to the efforts that were made and what was or was not discovered to meet the requirements set forth in Pitts. See id. at 312. (holding conclusory statements by People not sufficient to establish whether evidence exists and could be tested. "Supreme Court should take steps to obtain from the People reliable information as to whether or not the evidence sought exists and the source of such information. Adequate information from the People might include, for example, an affidavit from an individual with direct knowledge of the status of the evidence or an official record indicating its existence or nonexistence.").

The People's prior affirmation submitted in response to the prior section 440.10 motion was insufficient to satisfy their burden to determine the location and existence of the evidence to be tested. In that affirmation, the People posit only conclusory assertions as to why the evidence had not been located, whether the

23

evidence existed, and where it might be located.  <u>See</u> Ex. G.  Although the efforts of the People are detailed in the affirmation, the People provided no affidavits based on the personal knowledge of the evidence's location and its existence or destruction, and no official records that support such claims.  The People asserted that they were awaiting responses to their inquires of Orchid Cellmark, Inc., and Bode Technologies, Inc., companies that have acquired or may contain the DNA evidence initially retained by Lifecodes, as well as confirmation from the Office of the Chief Medical Examiner as to the location and existence of the DNA evidence.  Ex. G at 5.  However, no further information was ever provided.

While the People stated that they intended to continue their efforts to locate the forensic evidence and would voluntarily test the evidence if they found it, <u>id.</u> at 6, this promise is insufficient to relieve them of their burden to document to the Court their efforts.  The People are required to conduct a diligent, good faith effort to ascertain the existence of discovery property requested by the defendant, and to make that property available to a defendant.  <u>See</u> C.P.L. § 240.20; <u>see generally</u> <u>People v. Santorelli</u>, 95 N.Y.2d 412 (2000).  Moreover, under section 440.30(1-a), the Court must oversee the People's search and the People must submit the required documentation to this Court.  A simple promise for a continued unsupervised search is simply insufficient to satisfy the People's burden.  In any event, it has been over five years since the People made their promise and to date Mr. Allen has not been informed of any continued efforts to locate the evidence.

24

2. <u>There Is A Substantial Probability That DNA Testing Would Establish Mr. Allen's Actual Innocence</u>

Misidentification represents the leading cause for wrongful convictions.  <u>See</u>

Innocence Project, Eyewitness Misidentification,

http://www.innocenceproject.org/understand/Eyewitness-Misidentification.php last

visited October 15, 2012).  Indeed, the Innocence Project reports that mistaken

identification played a role in 75% of those convictions overturned following DNA

testing.  <u>Id.</u> Courts have long warned that mistaken identification "probably accounts

for more miscarriages of justice than any other single factor [and] perhaps . . . all

other factors combined."  <u>People v. Daniels</u>, 88 A.D.2d 392, 401 (2d Dep't 1982)

(citing <u>United States v. Wade</u>, 388 U.S. 218, 228-229 (1966)); <u>see also</u> <u>People v.</u>

<u>Crudup</u>, 100 A.D.2d 938, 939 (2d Dep't 1984)(there can be "no greater miscarriage

of justice than the conviction of an innocent person as the result of mistaken

identification."); <u>People v. Lawrence</u>, 111 Misc. 2d 1027, 1028 (App. Term 1981)

("misidentification of innocent persons [has] haunted criminal justice from ancient

times to the present").

The circumstances and facts surrounding this case present a classic case of

misidentification.  At trial, the evidence of Mr. Allen's guilt was limited to a single

witness who was a total stranger to Mr. Allen.  Notably, the complainant was not

100% confident of her initial identification and it was only after being shown Mr.

Allen's photograph again that she became convinced that she had identified the

25

correct man. Forensic evidence was obtained from the victim soon after the attack, but no such evidence was presented. Tellingly, although Mr. Allen was convicted, the jury had been prevented from learning that Mr. Allen did not have a chipped front tooth, a critical feature of the complainant's identification. The defense at trial was misidentification, and Mr. Allen presented alibi evidence that he was working somewhere else at the time of the incident.

The DNA evidence gathered presents the perfect opportunity for forensic DNA testing. This DNA testing will demonstrate that the DNA did not come from Mr. Allen. When the DNA test results are looked at in conjunction with Mr. Allen's other exonerating evidence, there is more than a substantial probability that the test results would confirm Mr. Allen's actual innocence. See generally People v. West, 41 A.D.3d 884 (3d Dep't 2007)(reversing denial of motion to compel DNA testing where evidence of guilt not overwhelming; defendant had recanted admission of sexual contact with victim, other evidence circumstantial, and jury informed DNA testing had not excluded defendant as source of the semen found inside victim).

That Mr. Allen subsequently pleaded guilty does not change this conclusion. It has long been recognized that innocent criminal defendants may plead guilty for, among other things, to avoid a longer sentence. See, e.g., People v. Alexander, 97 N.Y.2d 482 (2002). Indeed, the legislature recognized this very concept by amending the criminal procedure law to allow defendants who pleaded guilty to seek DNA testing. Here, Mr. Allen pleaded guilty in exchange for a sentence that made

26

him immediate eligible for parole and only after he had been informed that there was insufficient DNA evidence present for testing. Mr. Allen's guilty plea, therefore, does not affect the conclusion that the evidence against him was far from overwhelming and thus, he is entitled to DNA testing. Cf. People v. McIntosh, 53 A.D.3d 1 (1st Dep't 2008) (affirming denial of motion to compel DNA testing as there was no possibility that results would lead to more favorable verdict: defendant admitted have sex with victim but claimed it was consensual); People v. Kaminiski, 61 A.D.3d 1113 (3d Dep't 2009)(same).

In sum, Mr. Allen's case is a classic example where forensic DNA testing can prove, by a "substantial probability," that he was actually innocent of the crime for which he was convicted.

3.   Mr. Allen Did Not Unjustifiably Fail To Request Forensic DNA Testing Prior To Entering A Guilty Plea

In 1988 Lifecodes informed the parties that there was insufficient DNA material from the crime to allow for DNA testing. Ex. E. Under the circumstances, Mr. Allen can be said to have "unjustifiably" failed to have previously requested DNA testing. That technological and scientific advancements in DNA testing allow previously insufficient DNA samples to now be tested and confirmatory results to be achieved does not change this conclusion. These new testing techniques were not available at the time Mr. Allen entered his guilty plea and, therefore, he could not have "justifiably" failed to request that such tests be performed.

27

4.    Mr. Allen's Motion And Request For DNA Testing Is Timely

Mr. Allen's request for forensic DNA testing is timely because his motion falls within the "grace period" allowed when a new statute of limitations has been added to a statute.  In <u>Brothers v. Florence</u>, 95 N.Y.2d 290 (2000), the Court of Appeals addressed the question of whether a newly enacted statute of limitations on nonmedical malpractice claims applied retroactively to claims that had accrued prior to the effective date of the new statute of limitations, but which were not commenced until after the effective date.  The Court of Appeals determined that, where the Legislature failed to expressly state whether the new limitation period was to apply only to claims accruing after enactment, a "grace period" must be allowed for claims that would be considered untimely on the effective date of the statute.  <u>Id.</u> at 300.  When "a limitations period is statutorily shortened, or created where none existed before, Due Process requires that potential litigatants be afforded a 'reasonable time . . . for the commencement of an action before the [limitations] bar takes effect. . . .'"  <u>Id.</u> (citations omitted).  Where the legislature did not specify a grace period, "a court may uphold the constitutional validity of the retrospective application of the new statute by interpreting it as authorizing suits upon otherwise time-barred claims within a reasonable time after the statute's effective date. . . ."  <u>Id.</u> at 301 (citations omitted) (setting one-year grace period for nonmedical malpractice claims barred by new time limitation).  Courts should look to the legislative intent and the subject matter to determine a grace period for time-barred claims.  <u>See</u> <u>id.</u>

28

In deciding that a one-year grace period was reasonable, the Court of Appeals relied heavily on the Second Circuit's decision in Ross v. Artuz, 150 F.3d 97, 100 (2d Cir. 1998). In that case, the Second Circuit stated that "[b]ecause the Constitution prohibits governments from depriving any person of life, liberty, or property, without due process of law, 'all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts'" and it is thus "impermissible for a newly enacted or shortened statute of limitations to extinguish existing claims immediately upon the statute's enactment." Id. at 100 (citations omitted) (discussing limitations of habeas petitions time-barred by the Antiterrorism and Effective Death Penalty Act). The court continued that "[i]n adopting a new limitations period, the legislature may specify the grace period during which the pertinent claims may be asserted following the statute's enactment . . . [i]f, however, the statute is silent as to the grace period to be allowed, the courts must fashion a grace period that is appropriate 'in view of the subject matter'." Id. The court determined, given the importance of habeas petitions, that a one year grace period after the effective date of the AEDPA should have been accorded to prisoners whose convictions became final prior to the effective date of the Act's limitations provision. Id. at 102-03 (rejecting State's contention that a "generally applicable grace period of one year was not the standard law of the Circuit.").

Under Florence and Ross, Mr. Allen's motion, filed immediately after the effective date of the revised statute, must be considered timely. Because the

Legislature did not indicate that the statute of limitations did not apply retroactively, a "grace period" must be allowed and Mr. Allen's motion would clearly fall within that grace period.[4]  Failing to allow a grace period under the present circumstances would violate Mr. Allen's due process rights.  See Ross v. Artuz, 150 F.3d at 100. Whatever the grace period this Court creates based on the Legislature's intent and overriding public policy concerns, Mr. Allen's motion falls within the determined grace period because Mr. Allen's motion has been filed within days of the enactment of the newly revised C.P.L. §§ 440.30(1-a) and 440.10(1)(g-1).  Therefore, whether this Court should choose a reasonable time determination based on the specifics of Mr. Allen's case, or whether it adopts the generally applicable one year grace period adopted in Artuz and Florence, Mr. Allen would satisfy such a grace period timeliness requirement.[5]

---

[4]     An example of the Legislature indicating whether a statute of limitations would apply retroactively can be found in N.Y. Court of Claims Act § 8-b.  In subsection (7), the Legislature stated: "Any person claiming compensation under this section based on a pardon that was granted before the effective date of this section or the dismissal of an accusatory instrument that occurred before the effective date of this section shall file his claim within two years after the effective date of this section. Any person claiming compensation under this section based on a pardon that was granted on or after the effective date of this section or the dismissal of an accusatory instrument that occurred on or after the effective date of this section shall file his claim within two years after the pardon or dismissal."  Language such as this does not appear in the amended § 440.30(1-a).

[5]     In any event, the grace period should be, at least, one year as was set in Artuz and Florence.  Outside of the fact that the Legislature did not indicate that the statute of limitations should foreclose previously accrued claims, it is critical that before the statute created relief for defendants who had pleaded guilty, the Court of Appeals had previously held that there is no time limit for bringing a postconviction motion requesting the performance of forensic DNA testing.  See Pitts, 4 N.Y.3d at 311 ("A defendant may move for DNA testing pursuant to C.P.L. § 440.30(1-a) at any time.") (emphasis added).  Thus, there clearly is a strong public interest in providing a sufficient grace period to allow these claims to go forward.

30

Alternatively, the limitation period should be tolled in Mr. Allen's case and his request for DNA testing should be considered timely. Although Mr. Allen's judgment of conviction became final more than five years ago, the limitation period must be tolled because (1) Mr. Allen has vigorously been pursuing his rights; (2) extraordinary circumstances prevented the timely filing of the motion for DNA testing; and (3) the interests of justice would be served by tolling the limitation period.

Mr. Allen has been pursuing his rights diligently and has made prior requests that the forensic DNA evidence in this case be tested. See Ex. F. Mr. Allen was previously denied relief on his 2006 motion because the court determined that the language of section 440.30(1-a) was inapplicable to defendants who, like Mr. Allen, had pleaded guilty. See Exs. I & D.

The extraordinary circumstance preventing further testing here was not due to a lack of due diligence on Mr. Allen's part in pursuing a remedy. Rather, the remedy simply did not yet exist. Only after the Legislature modified section 440.30(1-a) could Mr. Allen seek relief that was previously unavailable to him.

Considering all the circumstances of Mr. Allen's case, it is evident that the interests of justice would be served by tolling the limitation period. The only evidence pointing to Mr. Allen's involvement in the crime was a single identification by the complainant, an identification that was in dispute because he was prohibited from showing the jury that he lacked a chipped tooth, a key feature of the

31

complainant's description of her attacker.  Mr. Allen presented a credible alibi and had a significant way to dispute a critical aspect of the complainant's description. Forensic evidence was obtained, and new testing technology could definitively establish that Mr. Allen was not the perpetrator of the crime and is actually innocent. Mr. Allen has been adamant in proclaiming his innocence and has now repeatedly requested the District Attorney's Office locate and test the forensic material that would establish his innocence.

There is a strong societal interest in having the DNA tests performed.  If the testing reveals that Mr. Allen's DNA is not present, but a different person's DNA is, then the State can run the DNA against the State and, possibly, national DNA databanks to try and determine the actual suspect.  In such a situation the defendant's, the People's, and society's interest converge.  These DNA tests have become routine and are not burdensome for the State to obtain.  While the State does have an interest in the finality of a criminal judgment, "society does not have any interest in the conviction or punishment of an innocent person." <u>People v. Cole</u>, 1 Misc. 3d 531, 543 (Sup. Ct., Kings Cty. 2003).  Thus, whatever interest the People may have in the finality of the judgment, it must give way to the overriding concern that an actually innocent person was convicted and testing may reveal who the true perpetrator was.  Determining who was the true perpetrator of this crime is essential to maintaining public confidence in the legitimate nature of the criminal justice system, and denial of the motion would leave open the question of whether the

32

People convicted an innocent man.

Alternatively, this Court should order a hearing to determine whether the forensic DNA evidence Mr. Allen is requesting still exists and can be located.  See C.P.L. § 440.30(1-a)(b); see also West, 41 A.D.3d at 885 (court "should have held a hearing to ascertain 'whether the DNA evidence in question exists.'").

C.    Once More Advanced DNA Testing Is Performed, Mr. Allen is Entitled to Vacatur of His Convictions as the Results Will Show a "Substantial Probability" That He Did Not Commit the Crime

The New York legislature also recently amended section 440.10 of the criminal procedure law to complement the changes to C.P.L. § 440.30(1-a). Effective October 1, 2012, defendants convicted after a guilty plea, like Mr. Allen, may obtain vacatur of their conviction based on the results of forensic DNA testing. See C.P.L. § 440.10(1)(g-1). Section 440.10(1)(g-1) permits a court to vacate a judgment, on motion of the defendant, on the ground that "[f]orensic DNA testing of evidence performed since the entry of judgment, (1) in the case of a defendant convicted after a guilty plea, the court has determined that the defendant has demonstrated a substantial probability that the defendant was actually innocent of the offense of which he or she was convicted . . ." Id. As shown supra, DNA tests performed on the forensic evidence in this case will establish a "substantial probability, that Mr. Allen was not the man who had committed this crime and thus, his convictions must be vacated and the indictment dismissed.

33

## CONCLUSION

FOR THE REASONS STATED HEREIN, THIS COURT
SHOULD ISSUE AN ORDER GRANTING MR. ALLEN'S
REQUEST FOR DNA TESTING ON THE EVIDENCE IN
THIS CASE; SUBSEQUENTLY, MR. ALLEN'S
JUDGMENT OF CONVICTION SHOULD BE VACATED
AND THE INDICTMENT DISMISSED. ALTERNATIVELY,
A HEARING SHOULD BE ORDERED.

Respectfully submitted,

ROBERT S. DEAN
Attorney for Defendant

Dan Hoth
Of Counsel

October 24, 2012

34

Exhibit K

| People v Allen |
| --- |
| 2008 NY Slip Op 00565 [47 AD3d 543] |
| January 29, 2008 |
| Appellate Division, First Department |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| As corrected through Wednesday, March 12, 2008 |

| The People of the State of New York, Respondent,<br>v<br>William Allen, Appellant. |
| --- |

—[*1] Robert S. Dean, Center for Appellate Litigation, New York City (Jonathan M. Kirshbaum of counsel), for appellant.

Robert T. Johnson, District Attorney, Bronx (Kayonia L. Whetstone of counsel), for respondent.

Order, Supreme Court, Bronx County (Robert G. Seewald, J.), entered on or about December 27, 2006, which denied defendant's CPL 440.30 (1-a) motion for DNA testing and his CPL 440.10 motion to vacate a judgment of Supreme Court, Bronx County (Elbert Hinkson, J.), rendered May 8, 1989, convicting him, upon his plea of guilty, of rape in the first degree, unanimously affirmed.

CPL 440.30 (1-a) does not permit persons who pleaded guilty to seek DNA testing of forensic evidence (*People v Lebron*, 44 AD3d 310 [2007]; *People v Byrdsong*, 33 AD3d 175 [2006], *lv denied* 7 NY3d 900 [2006]). There is no merit to defendant's argument that, since he was originally convicted after trial in 1983 and then pleaded guilty in 1989 following this Court's reversal of his trial conviction (140 AD2d 229 [1988], *lv denied* 72 NY2d 1043 [1988]), his case presents a "hybrid" situation and a trial "resulted" in the judgment. On the contrary, the trial resulted only in a judgment that this Court vacated; the ultimate judgment resulted solely from a guilty plea.

The CPL 440.10 branches of defendant's motion are likewise without merit. Concur—Lippman, P.J., Mazzarelli, Gonzalez, Sweeny and Acosta, JJ.

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION, FIRST DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK,

*Respondent,*

— against —

WILLIAM ALLEN,

*Defendant-Petitioner.*

AFFIRMATION OF
SERVICE

Ind. No. 623-1983
(Bronx County)
AD No. 2023-04645

WILL A. PAGE, an attorney duly admitted to practice in the State of New York,

hereby affirms under penalty of perjury that the following is true:

I am an attorney at the Office of the Appellate Defender, and on February 13, 2025,
I served the enclosed notice of motion, affirmation, and memorandum of law, with
the attached exhibits, upon:

1. Respondent at the Office of District Attorney, Bronx County, 198 E. 161st Street,
   Bronx, New York, 10451, by e-mailing said documents to an email address
   designated by them for that purpose;

2. Mr. William Allen by mailing a copy to the address he has designated for the receipt
   of legal mail.

Dated:    New York, New York
          February 13, 2025

WILL A. PAGE, ESQ.

People v Allen, 140 A.D.2d 229 (1988)

528 N.Y.S.2d 380

Later that evening, the complainant described her attacker to police officers as a tall black male, wearing a blue hood, brown overjacket, blue jeans, and white sneakers. When asked to specify her assailant's height, she pointed to her uncle who was 6 feet tall. A short while later, the police officers brought a dark-skinned hispanic suspect back to the complainant. However, she recognized him as a man from the neighborhood and stated he was not her attacker. The next day, in an interview with a detective from the Bronx Sex Crimes Unit, the complainant again gave essentially the same description of her attacker, but she added that the man had a chipped tooth. *231

On January 9, the complainant went to the photo unit at the 48th Precinct where, after reviewing approximately 600 photographs, she selected a picture of the defendant. When asked how certain she was of this identification on the scale of 1 to 10 the complainant answered "nine and a half." On January 14, she again selected a photograph of the defendant and said that this time she was 100% certain of her identification. Following the defendant's arrest, the complainant viewed a lineup of six individuals and selected him as the man who had raped her.

The complainant testified that she observed her assailant's face in the lobby, where the lighting was good, and on the second floor, where it was even brighter. She clearly saw his face about seven times in all during the attack and she had noted that one of his upper right incisors had "a little crack on the bottom part of the tooth, just a little chip. You could hardly notice it though." She identified the defendant as her assailant.

The defense called a tavern owner who testified that the defendant, who frequently helped him by doing odd jobs, was at the tavern from 7:00 until after 11:00 on the evening in question rehearsing for a show. Defense counsel then moved to have the defendant exhibit his teeth to the jury and offered to introduce the defendant's dental records from when he was admitted to the Marine Corps in 1980. The defense also planned to call an expert witness to testify that the defendant's

mouth had not undergone alteration from that time to the time of trial.

The trial court, apparently under the impression that the evidence proffered by the defendant was testimonial in nature, ruled that if the defendant exhibited his teeth to the jurors, he would be subject to cross-examination by the People as to the condition of his mouth on January 5, 1983, and as to anything that would relate to his credibility. This was error.

The condition of the defendant's tooth on the date of the rape was a critical piece of evidence bearing on the identification of the defendant as the rapist, inasmuch as the chipped tooth was an unusual, distinguishing feature observed by the complainant. The Marine Corps dental records made prior to the incident together with expert testimony that the defendant's upper right tooth had not been altered since those records were made, sufficed to establish the relevance of the real evidence which the defendant proposed to show to the jury *(People v. Shields*, 81 AD2d 870 [2d Dept 1981]; *see also, *232 People v. Rodriguez*, 64 NY2d 738, 741 [1984]). The display of the accused's physical characteristics has long been held not to implicate the Fifth Amendment privilege against self-incrimination because such evidence is nontestimonial in nature *(Holt v. United States*, 218 US 245, 252-253 [1910]; *United States v. Dionisio*, 410 US 1, 5-6 [1972]). Thus, the trial court would have unnecessarily required the defendant to take the stand and undergo cross-examination in order to present to the jury the best evidence, which was nontestimonial, in support of his defense of mistaken identity *(People v. Shields*, supra. at 871). Given that the only proof of the defendant's guilt was the complainant's identification, this error cannot be deemed harmless. *(See in general*, Stadtmauer, *Exhibit A: the Human Body*, 60 NY St BJ 38.)

We have considered the other claims raised by the defendant and find them without merit. We therefore reverse and remand for a new trial.

Copr. (C) 2025, Secretary of State, State of New York

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

People v Allen, 140 A.D.2d 229 (1988)
528 N.Y.S.2d 380

**New York**
Official Reports

140 A.D.2d 229, 528 N.Y.S.2d 380

The People of the State of New York, Respondent,

v.

William Allen, Appellant.

Supreme Court, Appellate Division,
First Department, New York
33322
May 19, 1988

CITE TITLE AS: People v Allen

**HEADNOTE**

CRIMES
IDENTIFICATION OF DEFENDANT

(1) Judgment convicting defendant of rape in first degree and other offenses reversed and matter remanded for new trial --- Central issue in case was complainant's identification of defendant as her assailant --- Complainant testified that one of defendant's teeth was chipped; defense counsel moved to have defendant exhibit his teeth to jury and offered to introduce defendant's dental records from when he was admitted to Marine Corps in 1980; defense also planned to call expert witness to testify that defendant's mouth had not undergone alteration from that time to time of trial; trial court ruled that if defendant exhibited his teeth to jurors, he would be subject to cross-examination by People as to condition of his mouth on date of incident and as to anything that would relate to his credibility; this was error --- Condition of defendant's tooth on date of rape was critical piece of evidence bearing on identification of defendant as rapist, inasmuch as chipped tooth was unusual, distinguishing feature observed by complainant; Marine Corps dental records made prior to incident, together with expert testimony that defendant's tooth had not been altered since those records were made, sufficed to establish relevance of real evidence which defendant proposed to show to jury; display of accused's physical characteristics does not implicate privilege against self-incrimination because such evidence is nontestimonial in nature; thus, trial court would have unnecessarily required defendant to take stand and undergo cross-examination in order to present to jury best evidence, which was nontestimonial, in support of his defense of mistaken identity; given that only proof of defendant's guilt was complainant's identification, this error cannot be deemed harmless.

**OPINION OF THE COURT**

Concur--Kupferman, J. P., Sandler, Carro, Rosenberger and Smith, JJ.

Judgment, Supreme Court, Bronx County (Dennis Edwards, Jr., J.), rendered October 14, 1983, convicting the defendant, after jury trial, of rape in the first degree, sodomy in the first degree, robbery in the first **\*230** degree, criminal use of a firearm in the first degree, and criminal possession of a weapon in the fourth degree, unanimously reversed, on the law, and the matter remanded for a new trial.

The central issue in the case was the complainant's identification of the defendant as her assailant. The defendant contends that the trial court erred in refusing to permit him to display a physical characteristic to the jury unless he took the stand and submitted to cross-examination by the prosecutor.

The evidence established that the complainant was raped and sodomized on the evening of January 5, 1983, in her apartment building in The Bronx. The complainant, who returned home at about 10:00 P.M., noticed a man wearing a blue hood and brown overjacket standing in the lobby as she entered. She summoned the elevator and rang for the ninth floor where she lived, but the elevator stopped on the second floor. When the doors opened she saw the man in the blue hood standing with a gun pointed at her face. He told her to get off the elevator and she complied. He then said "everybody is going to pay, everybody is going to suffer." The complainant, who is 4 feet, 11 inches tall, looked up at the man's face as he spoke, wondering what he was referring to.

The man forced the complainant, at gunpoint, to walk down to the first floor landing where he repeatedly raped and sodomized her. During the attack, the complainant heard someone descending the stairs. Her attacker threatened that if she screamed he would kill her and whoever was coming downstairs. No one, however, descended to the first-floor landing. Before fleeing, the man took the complainant's watch and ordered her to remove her pants. After she had done so, he ran out the front door and the complainant ran upstairs to her apartment.

Exhibit N

SUPREME COURT·OF THE STATE OF NEW YORK
BRONX COUNTY: CRIMINAL TERM – PART T-17
-------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

- against -

WILLIAM ALLEN,

Defendant.
-------------------------------------------------------------------x

RECEIVED

DEC 15 2006

SUPREME COURT CLERK'S OFFICE
BRONX COUNTY

AFFIRMATION IN OPPOSITION
Indictment Number 623/83

I, MARY JO L. BLANCHARD, an attorney duly admitted to practice before the courts of this state, affirm under penalty of perjury pursuant to CPLR Rule 2106 that the following statements are true, except for those statements made upon information and belief, which I believe to be true:

1.      I am an Assistant District Attorney in the Office of Robert T. Johnson, the District Attorney of Bronx County. I submit this affirmation in opposition to defendant's motion, which he filed pursuant to CPL §§ 440.10(1)(h) and 440.30(1-a), seeking DNA testing and vacatur of his judgment of conviction.

2.      I have prepared this affirmation on personal knowledge and on information and belief, based on defendant's papers, the records of this Office, and conversations with Assistant District Attorneys Mimi Mairs and Rachel Singer.

3.      On May 8, 1989, in New York State Supreme Court, Bronx County (Hinkson, J.), defendant was convicted, following a guilty plea, of Rape in the First Degree (Penal Law § 130.35[1]), and Robbery in the First Degree (Penal Law § 160.15), and was sentenced to an indeterminate term of imprisonment of from six to eighteen years.

4.      During the plea allocution on April 3, 1989, defendant admitted raping, sodomizing

and robbing the victim, over a period of thirty minutes on the date of the crime (Exhibit B, p. 4-8,

attached to defendant's motion), and reaffirmed his guilt just prior to sentencing on May 8, 1989:

> THE COURT: You did, in fact, plead guilty because you were guilty, is that correct,
> Mr. Allen?
>
> THE DEFENDANT: Yes, your Honor.

(Exhibit C, p. 4, attached to defendant's motion).[1]

5.      Defendant's guilty plea was entered just before the commencement of what would

have been his second jury trial on this indictment.  On May 19, 1988, finding judicial error, the

Appellate Division, First Department, reversed defendant's previous October 14, 1983 conviction

on this indictment, which was rendered after a trial by jury. *See People v. Allen*, 140A.D.2d 229 (1st

Dept. 1988) (requirement that defendant must testify if he wished to display his teeth to the jury was

error).

6.      Defendant was released from custody on or about April 23, 1998[2], and discharged

from parole on or about February 21, 2001.

7.      On December 13, 2002, in New York State Supreme Court, New York County

(Snyder, J.), defendant was convicted, following a trial by jury, of Rape in the First Degree (Penal

---

[1]Additionally, according to Assistant District Attorney Susan Broderick, of the Office of the District Attorney, New York County, on October 27, 1992, defendant told the parole board that he committed the rape in the Bronx: "The truth is, I did commit this crime. It was in fact a heinous and immoral act that I did. I realize that. I don't know if I will ever be forgiven by society. I know I have to go on with my life" (see Exhibit G, p. 4 [ADA Broderick quoting from the minutes of the parole hearing during defendant's original sentencing on New York County Indictment Number 1826/2000 (see infra, ¶ 7-8)], attached to defendant's motion).

[2] Defendant was originally released from custody on or about January 30, 1995, but returned to custody after his parole was revoked on or about August 8, 1997.

Law § 130.35[1]), Sodomy (Penal Law § 130.50[1]) (two counts) , and Sexual Abuse in the First Degree (Penal Law § 130.65[1]), for acts committed upon his daughter (New York County Indictment Number 1826/2000). On July 21, 2003, defendant was adjudicated a predicate offender, based upon his conviction in the Bronx case, and was sentenced to consecutive determinate terms of imprisonment that aggregated to fifty years pursuant to Penal Law § 70.30(1)(e)(vii)(A).

8.      Thereafter, defendant moved to set aside his sentence on Indictment Number 1826/2000 pursuant to CPL § 440.20. Defendant, through his attorney, claimed that defendant was deprived of his right to counsel at sentencing because defendant proceeded *pro se* without the court first conducting a "searching inquiry." In a *pro se* supplemental brief, defendant alleged essentially the same claims. After conducting a hearing on the matter, in an Order dated on or about May 17, 2006, Supreme Court, New York County (Correiro, J.), set aside defendant's sentence and granted a re-sentencing hearing. On May 17, 2006, defendant, represented by counsel, was re-adjudicated a predicate offender, and was re-sentenced on Indictment Number 1826/2000 to consecutive determinate terms of imprisonment that aggregated to fifty years pursuant to Penal Law § 70.30(1)(e)(vii)(A). Defendant remains incarcerated pursuant to that judgment.

9.      Now, in papers dated May 3, 2006, filed through counsel, Robert S. Dean, Esq., of the Center for Appellate Litigation (Jonathan M. Kirshbaum, Esq., *of counsel*), pursuant to CPL § 440.30(1-a) and the Due Process clause, defendant requests deoxribonucleic acid ("DNA") testing on the items that were submitted, in preparation for an expected second trial on Bronx County Indictment Number 623/83, to Lifecodes Corporation in 1988 (to wit: underpants, "seminal fluid reag. packet," saliva, "EDTA blood tube," pubic hair combings, "pubic hair std.," and vaginal smear slides), as well as nylon membranes maintained by Lifecodes Corporation, any biological fluids in the remainder of the rape kit, and "clothing, shakings from clothing, gauze pads, slides, swabs, tissue

3

blocks or cultures, hair, fingernail clippings, saliva, secretions or any other fluid or item that could be susceptible to DNA testing" (see defendant's mem. of law, p. 9-11); and seeks vacatur of his judgment of conviction on that indictment, pursuant to CPL § 440.10(1)(h) and (g), claiming that the DNA test results constitute "new evidence," and that he is actually innocent and, thus, convicted in violation of the state and federal constitutions.

10.    Upon receiving defendant's motion in mid-May of 2006, I requested defendant's trial folder from the archives division of this Office, and informed then Assistant District Attorney Mimi Mairs, who was the DNA coordinator for this Office, of defendant's request for DNA testing. ADA Mairs contacted the Office of the Chief Medical Examiner ("OCME") and inquired into whether or not defendant's case was part of the New York City Police Department's DNA Backlog Project (which *sua sponte* tested old specimens for possible DNA). Upon information and belief, ADA Mairs was informed by Marie Samples of the OCME that she could not determine that without police department voucher numbers for the possible specimens. Ms. Samples also informed ADA Mairs that, to her knowledge,  the oldest cases in the DNA Backlog Project involve crimes committed in 1988 or 1989.

11.    I received this Office's case file approximately two months later and examined its contents. There was no physical evidence of the type specified in defendant's motion that could possibly contain DNA inside the folder. I then delivered the folder, which contained the relevant NYPD vouchers, to Assistant District Attorney Rachel Singer, who, by that time, had replaced ADA Mairs as the DNA coordinator for this Office.

12.    ADA Singer assigned Justin Herzlich, a case-aid whose primary duty is to assist the DNA coordinator in locating possible DNA specimens on old cases, to contact the 48thPrecinct (where the crime occurred), and the property clerks at 215 East 161st Street, Bronx, and Pearson

4

Exhibit L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF THE BRONX: PART 17
----------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK

       -against-                    Indictment No. 623/83

WILLIAM ALLEN,

                          Defendant
----------------------------------------------------------------x
ROBERT G. SEEWALD, J.:

       Defendant's motion, pursuant to CPL § 440.30 (1-a), for DNA testing is denied - without prejudice - for the reasons stated by the Appellate Division in the recently decided case of **People v Byrdsong** (33 AD3d 175 [2nd Dept 2006]).[1]

       Appellate counsel for the defendant has set forth in meticulous detail the chronology of the various events giving rise to the instant judgment of conviction. Stripped to its essentials, though, on April 3, 1989, according to appellate counsel's moving papers [dated 5/3/06], defendant pleaded guilty to rape in the first degree and robbery in the first degree in exchange for a promised sentence of 6 to 18 years (id. at p 6, ¶11). The promised sentence was thereafter imposed the next month, on May 8th (id. at p 6, ¶13).

       Defendant now seeks to vacate the judgment of conviction upon the alleged ground that DNA testing of specific evidence in the People's possession will exonerate him.

       Unfortunately for the defendant, a unanimous Appellate Division, in the recently decided case of **People v Byrdsong** (33 AD3d 175, supra), expressly held that a defendant who has pleaded guilty - as opposed to being found guilty after trial - is not entitled to relief

---

[1] Defendant's motion, although made returnable on May 16, 2006 in Part A, was recently assigned to this Court for decision, on November 14, 2006. On December 15th, the People served their written response, wherein they represent that they will voluntarily test the subject material - when it is located and becomes available to them - for the presence of DNA evidence.

pursuant to CPL § 440.30 (1-a).

Although the Byrdsong opinion was rendered by an appellate panel in the Second Department, the law is firmly established that, in the absence of a contrary decision from our Court of Appeals or the Appellate Division, First Department, this Court - one of nisi prius - is clearly bound to follow the Byrdsong decision (see People v Shakur, 215 AD2d 184, 185 [1st Dept 1995]) and, consequently, may not write anew on this precise issue.

Accordingly, this Court is constrained by appellate precedent to deny the defendant's CPL § 440.30 (1-a) application (see also Duffy v Horton Memorial Hospital, 66 NY2d 473, 475). Said denial, however, is without prejudice, as noted above.[2]

That branch of the defendant's motion to vacate the instant judgment of conviction, pursuant to CPL 440.10 (1) (g), on the alleged ground of newly discovered evidence is also denied.

The law is well established that "CPL 440.10 (1) (g) is limited, by its very terms, to evidence discovered 'since the entry of a judgment based upon a verdict of guilty after trial'" (People v Philips, 30 AD3d 621, 622 [2nd Dept]). Since the defendant, as earlier noted, pleaded guilty, he may not properly rely upon CPL § 440.10 (1) (g) (see People v Philips, 30 AD3d at 622; People v Sides, 242 AD2d 750, 751 [3rd Dept 1997], lv denied 91 NY2d 836 [defendant's plea of guilty forecloses relief predicated upon this ground]).

Dated: December 20, 2006                    _____
                                                             J.S.C.

_____

[2]  In the event that the subject material is located and becomes available and the People voluntarily elect to do DNA testing in this case, in accordance with their representation, then the defendant may renew the instant motion if the test results so warrant it.

2

Exhibit M

Place in Queens, which is the NYPD's property warehouse. Officers at each of these locations informed Mr. Herzlich that a search of their respective premises did not turn up any property under the relevant voucher numbers. Additionally, the property clerks from 215 East 161st Street and Pearson Place could not locate any paperwork indicating that the property under those voucher numbers had been destroyed.

13.     Upon the request of ADA Singer, Detective James McGovern also spoke with the property clerks located inside 215 East 161st Street and at Pearson Place, but received the same information – they neither had the property, nor any paperwork indicating what became of the property. The property clerk at 215 East 161st Street, however, referred Detective McGovern to another property location – Abbott Street Archives in The Bronx – in case the property was mistakenly sent there. Detective McGovern visited that location and was informed that they did not have the property.

14.     Upon information and belief, Lifecodes Corporation was acquired by Orchid Cellmark, Inc., which has laboratories in the United States and the United Kingdom, in or about December of 2001. Upon information and belief, some of Lifecodes Corporation's samples also may have been forwarded to Bode Technologies, Inc., in Washington, D.C.

15.     ADA Singer wrote to Orchid Cellmark, Inc., and Bode Technoligies, Inc., requesting information on the status of the nylon membranes created by Lifecodes Corporation in connection with this case. She is awaiting a response.

16.     Upon information and belief, the OCME does not maintain physical property or DNA specimens on old cases in its offices. ADA Singer provided the OCME with the relevant voucher numbers, and requested that they search the DNA Backlog Project once more. She is awaiting a response.

5

17.    The People intend to continue their efforts to determine whether or not any DNA evidence still exists on this case. If it can be located, we will voluntarily test.

18.    The People recognize that, under CPL § 440.30(1-a), defendant does not "bear the burden of showing that the specified DNA evidence exists and is available in suitable quantities to make testing feasible," and that a hearsay assertion, by the People, is insufficient to garner summary denial of a motion made pursuant to that statute. *People v. Pitts*, 4 N.Y.3d 303, 311-12 (2005) ("mere assertion that the evidence no longer exists based on a phone call to a police Property Clerk's office is insufficient"). To date, however, despite diligent searching, the People have been unable to obtain confirmation of either the existence (and, therefore, location) or destruction of the evidence that defendant wants tested. If this Court feels constrained to decide defendant's motion at this time, and determines that CPL § 440.30(1-a) is applicable, the People respectfully request additional time to provide affidavits from individuals in the NYPD, the OCME, Orchid Cellmark, Inc., and Bode Technologies, Inc, attesting to their personal efforts searching for any remaining biological evidence.

19.    The People note, however, that at least one intermediate appellate court has held that CPL § 440.30(1-a) is inapplicable to individuals, like defendant, who have pled guilty. *See People v. Byrdsong*, 33 A.D.3d 175, 820 N.Y.S.2d 296, 299 (2d Dept. 2006).[3][4]

---

[3] Upon information and belief, based on a conversation with A.D.A. Jennifer Storms from the Appeals Unit of the Office of the District Attorney, Queens County, the Court of Appeals issued a certificate denying leave to appeal on November 7, 2006.

[4] When there is no reported decision by the Court of Appeals or the Appellate Division in the First Department dealing with the issue presented, then trial courts within the First Department are required to follow the determination of the Appellate Division in another department "until such time as [the First Department] or the Court of Appeals passes on the question." *People v. Shakur*, 215 A.D.2d 184 (1st Dept. 1995) (citing *People v. Anderson*, 151 A.D.2d 335 [1st Dept.1989] and *Mountain View Coach Lines v Storms*, 102 A.D.2d 663 [2d Dept. 1984]). As of yet, neither the Court of Appeals, nor the First Department of the Appellate Division has issued a decision on this particular issue.

6

20.    CPL § 440.30(1-a) provides:

Where the defendant's motion requests the performance of a forensic DNA test on specified evidence, and upon the court's determination that any evidence containing deoxyribonucleic acid ('DNA') was secured *in connection with the trial resulting in the judgment*, the court shall grant the application for forensic DNA testing of such evidence upon its determination that if a DNA test had been conducted on such evidence, and if the results *had been admitted in the trial resulting in the judgment*, there exists a reasonable probability that the verdict would have been more favorable to the defendant (emphasis supplied).

21.    By its terms, the statute "explicitly requires conviction by verdict and judgment after trial." *Byrdsong*, 33 A.D.3d at ___, 820 N.Y.S.2d at 299. Here, the defendant's 1989 conviction was not the result of a trial. Thus, "[s]ince defendant pled guilty, he is not entitled to relief pursuant to CPL 440.30(1-a)." *Id.*

22.    Despite defendant's request (see defendant's mem. of law, p. 15-17), since the legislature has spoken on the issue, by enacting CPL § 440.30(1-a) and delineating a specific class of individuals who are entitled to DNA testing, this Court should not fashion a new remedy for those who fall outside of that class.

23.    Furthermore, "[a]bsent statutory authority, there is simply no entitlement to request discovery in a post-conviction framework." *Washpon v. New York State Dist. Atty., Kings County*, 164 Misc.2d 991, 993 (Kings Co. 1995). Nor can defendant successfully rely upon *Brady v. Maryland*, 373 U.S. 83 (1963). The samples that defendant wants tested were previously tested for DNA in 1989. Nothing was withheld from him. *See People v. Callace*, 151 Misc.2d 464 (N.Y. Co. 1991). Unless and until this Office locates the items that defendant wants tested, it is premature to mandate DNA testing. *Compare with Dabbs v. Vergari*, 149 Misc.2d 844 (Westchester Co. 1990) (known situs of DNA evidence).

7

24.    Finally, since there currently is no "new evidence" casting doubt on defendant's guilt, there is no basis upon which to vacate defendant's judgment of conviction.    Consequently, defendant's motion, pursuant to CPL §§ 440.10(1)(h) and (g) must be denied.


WHEREFORE, the People of the State of New York respectfully request that, if this Court decides defendant's motion at this time, it should be denied in its entirety.

Dated: Bronx, New York
       December 15, 2006

Mary Jo L. Blanchard
Assistant District Attorney

8

FIRST-CLASS MAIL

NEOPOST
03/07/2025
US POSTAGE $004.61

ZIP 12582
041M11466608

Confidential Legal mail

United States District Court
Chambers of Chief Judge
Laura Taylor Swain
U.S. Courthouse
NYC, New York 10007



RECEIVED
MAR 12 2025
PRO SE OFFICE

...ville, New York 12582-4000